**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VERENA DEL ROSARIO KALAL,
                    *Petitioner,*

v.

ALBERTO GONZALES,* Attorney
General,

                    *Respondent.*

No. 03-71354

Agency No.
A73-418-125

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 11, 2005—Seattle, Washington

Filed March 30, 2005

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Fernandez

---

*Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

## COUNSEL

Bart Klein, Law Offices of Bart Klein, Seattle, Washington, for the petitioner.

Greg D. Mack, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

FERNANDEZ, Circuit Judge:

Verena Del Rosario Kalal petitions for review of the Board of Immigration Appeals' summary affirmance of the Immigration Judge's (IJ) determinations which rescinded her conditional legal permanent resident status, denied her withholding of removal, and ordered her removed. That took place after she failed to comply with the terms of her K-1 visa. We deny the petition.

## BACKGROUND

Kalal is a native and citizen of Colombia. On June 25, 1996, upon the petition of her United States citizen fiancé, Mark Salvador Scardino, a K-1 nonimmigrant visa was issued in Kalal's favor. She entered this country on or about July 4, 1996. A K-1 visa is issued for the sole purpose of facilitating a valid marriage between an alien and a United States citizen, and that marriage must take place within ninety days of entry. 8 U.S.C. §§ 1101(a)(15)(K)(i), 1184(d). Kalal did not marry Scardino within ninety days, or at all. Instead, she went her own way and later met Kenneth Leroy Kalal. She married him on December 2, 1996.

Thereafter, the Immigration and Naturalization Service granted her conditional legal permanent resident status upon the petition of Kenneth Leroy Kalal, but did so in error because she was not entitled to that status at that time. When the INS discovered its error, it gave notice that it purposed to rescind her conditional legal permanent resident status, and did so on June 28, 2001, by action of the District Director. Removal proceedings were then commenced.

In due course, the IJ declared that the conditional legal permanent resident status should, indeed, be rescinded, that she was not entitled to adjustment of status, and that she would be removed to Colombia should she fail to depart voluntarily within the allotted time. The BIA summarily affirmed. *See* 8 C.F.R. § 1003.1(e)(4). This petition for review followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252(a).

Because the IJ's decision dealt with issues of law only and the BIA affirmed without opinion, we review the IJ's decision de novo. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 851

(9th Cir. 2003); *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir. 1999).

## DISCUSSION

### A. *The Rescission Decision*

Kalal asserts that the IJ should not have made a removal decision when he did because a separate rescission proceeding had to be concluded before a removal hearing could even be commenced. We do not agree, but must outline the statutory scheme before we proceed further.

**[1]** A K-1 visa holder is not an immigrant, but rather, as relevant here, is a person who "is the fiancee or fiance of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission." 8 U.S.C. § 1101(a)(15)(K)(i). In order to obtain a K-1 visa, a woman's United States citizen fiancé must have petitioned for it, and it will not issue unless there is satisfactory evidence that the parties "have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival." 8 U.S.C. § 1184(d). Moreover, "[i]n the event the marriage with the petitioner does not occur within three months after the admission of the said alien . . . , [she] shall be required to depart from the United States and upon failure to do so shall be removed." *Id.* There is no provision for waiving those requirements. Even if a timely marriage takes place, there are further restrictive provisions.

**[2]** At that point, the alien may apply for lawful permanent resident (LPR) status. *See* 8 C.F.R. § 214.2(k)(6)(ii). However, full status is not then possible because the alien "shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis." 8 U.S.C. § 1186a(a)(1).

Thus, the alien becomes a conditional lawful permanent resident (CLPR). Then, there is a two-year wait and another application, usually joined in by both the alien and the United States citizen spouse, must be made to remove the condition. *Id.* § 1186a(c)(1)(A). Absent that, the alien's CLPR status is terminated, and removal follows. *Id.* § 1186a(c)(2).

**[3]** Kalal did not meet any of those conditions. In fact, she never did marry Scardino; instead, more than 90 days after she entered on her K-1 visa, she married Kenneth Kalal. Nevertheless, a petition was submitted on her behalf and, through an administrative error of some sort, the INS issued her an adjustment to CLPR status. When she later petitioned to remove the condition, the error was discovered, and in November of 2000, the INS issued a notice of intent to rescind that status. Kalal sought a hearing, but the District Director terminated her CLPR status on June 28, 2001. Removal proceedings, which resulted in the removal order in question here, then ensued.

There is no real dispute that, as the IJ found, Kalal was entitled to a hearing before an IJ on the issue of rescission of her CLPR status. *See* 8 C.F.R. §§ 246.1, 246.3. She argues that consideration of the rescission issue must take place in an earlier separate proceeding, and cannot be decided by the IJ at a removal hearing. That is not correct.

**[4]** Because a hearing before the IJ did take place in this case, she was not prejudiced by the fact that the recession and removal proceedings were, in effect, combined. Thus termination of this removal proceeding was not required. *See Matter of Hernandez*, 21 I. & N. Dec. 224, 227-28 (BIA 1996); *see also* 8 U.S.C. § 1256(a). That makes sense here because there appears to be no reason other than mere delay to keep the hearings in pristine isolation from one another, particularly when it is realized that rescission of the CLPR status means that a K-1 visa holder must depart.

Therefore, we will turn to the real question in this case: can Kalal somehow evade the strictures of the K-1 program?

B.   *Removal; Adjustment of Status*

Once her improperly granted CLPR status was rescinded, Kalal was in the position of a K-1 visa holder who neither married her fiancé within 90 days of entry, nor departed. In short, she was removable. 8 U.S.C. § 1184(d). But, says she, her removal can be avoided by use of the provisions of 8 U.S.C. § 1255 to adjust her status to that of an LPR once again. She is wrong.

**[5]** Congress perceived that a claim of that sort might be made, so it enacted a provision which declares:

> The Attorney General may not adjust, under subsection (a) of this section, the status of an alien lawfully admitted to the United States for permanent residence on a conditional basis under section 1186a of this title. The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101(a)(15)(K) of this title except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101(a)(15)(K) of this title.

*Id.* § 1255(d). In other words, the Attorney General is not permitted to adjust the status of a K-1 visa holder except to the status of a CLPR pursuant to 8 U.S.C. § 1186a. Moreover, the Attorney General is not permitted to adjust the status of a CLPR pursuant to the provisions of 8 U.S.C. § 1255. Kalal's position is, therefore, hopeless. Still, she grasps at another subsection of § 1255.

Kalal argues that she can obtain relief pursuant to 8 U.S.C. § 1255(i). That desperate, oneiric hope for relief must be dashed because § 1255(i)(l) only provides relief "[n]otwithstanding the provisions of subsections (a) and (c)." Notably absent is a reference to subsection (d), which is the provision that blocks Kalal's relief in this case.

Nor is Kalal saved by *Matter of Stockwell*, 20 I. & N. Dec. 309, 311-12 (BIA 1991). In that case, the alien had not entered the United States on a special K-1 visa, and, as already noted, Congress has enacted a specific restrictive process for holders of that kind of visa. Moreover, at one point Stockwell did, at least, achieve proper CLPR status. *Id.* at 309. If Kalal were correct, that case would, quite problematically, allow a K-1 visa entrant to entirely avoid the carefully crafted scheme that Congress created for the purpose of avoiding marriage fraud. As such, the case would itself be of dubious validity.

The last straw at which Kalal grasps[1] is *Matter of Zampetis*, 14 I. & N. Dec. 125 (Reg'l Comm'r 1972). However, that case does not solve her problem because in its cryptic discussion it posits the possibility of an adjustment under 8 U.S.C. § 1255,[2] which now expressly precludes adjustment for K-1 visa holders who do not follow the procedure set forth in 8 U.S.C. § 1186a.[3]

Perhaps it is also worth noting that *Zampetis* at least

---

[1]We have not overlooked Kalal's reference to an INS operating instruction, but those instructions do not have any binding effect. *See, e.g.*, *Matter of Merced*, 14 I. & N. Dec. 644, 646 (BIA 1974).

[2]*Zampetis*, 14 I. & N. Dec. at 125-26.

[3]*See* 8 U.S.C. § 1255(d); Charles Wheeler, *Until INS Do Us Part: A Guide to IMFA*, 90-03 Immigr. Briefings 1 nn.253-57 & accompanying text (Mar. 1990). By the way, *Zampetis*, 14 I. & N. Dec. at 126, also relied upon 8 U.S.C. § 1259, which only applies to aliens who entered prior to January 1, 1972.

involved an alien who married somebody within the 90-day period, just as *Stockwell* involved an alien who had at least achieved proper CLPR status. Kalal, on the other hand, did not comply with any of the legal strictures of 8 U.S.C. §§ 1184 & 1186a.

## CONCLUSION

Kalal entered the United States on a K-1 visa. That subjected her to a number of strictures that Congress carefully designed for the purpose of putting an end to the activities of those who would otherwise take advantage of its solicitude for affianced couples. She abided by none of the restrictions, and now suggests that she can avoid them entirely — no need to marry her fiancé within 90 days; no need to marry him at all, actually; and no need to obtain a legal CLPR status as those who follow the law must. We do not think that Congress would countenance that flouting of its enactments, nor do we think that it would wish to have the Attorney General or us do so. In short, Kalal was properly ordered removed.

Petition DENIED.