PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LJUPCO MARKOVSKI,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General; MICHAEL CHERTOFF,
Secretary of Department of
Homeland Security,

*Respondents.*

No. 05-2317

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A75-960-047)

Argued: February 1, 2007

Decided: May 21, 2007

Before WIDENER, TRAXLER, and DUNCAN, Circuit Judges.

---

Petition denied by published opinion. Judge Widener wrote the opinion, in which Judge Traxler and Judge Duncan concurred.

---

## COUNSEL

**ARGUED:** Jennifer Sheethel Varughese, Herndon, Virginia, for Petitioner. Leslie Megan McKay, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondents. **ON BRIEF:** Joe W. Nesari, Herndon, Virginia, for Petitioner. Peter D. Keisler, Assistant

Attorney General, Civil Division, Linda S. Wernery, Assistant Direc-tor, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondents.

---

## OPINION

WIDENER, Circuit Judge:

This is a petition for review of a final decision by the Board of Immigration Appeals (the Board). We have jurisdiction under 8 U.S.C. § 1252(b)(2).

### I.

Ljupco Markovski is a national and native of Macedonia who entered the United States on September 18, 1998 on a K-1 fiancé visa. Markovski married his fiancée, Miss Kathleen Spillman (a U.S. citizen) on November 10, 1998 (within 90 days of entry as required by law, 8 U.S.C. § 1184(d)). The government does not dispute that the marriage was entered into in good faith and not for the purpose of fraudulently obtaining an immigration benefit.

On November 16, 1998 Markovski filed a petition with the Immigration and Naturalization Service[1] for adjustment of status to that of an alien admitted for residence based on his marriage to Miss Spillman pursuant to 8 U.S.C. § 1255. On February 7, 2000, prior to the adjudication of his petition for adjustment of status, Markovski's marriage ended in divorce.

The Immigration and Naturalization Service deemed Markovski's application abandoned because he failed to appear at the required interview. Markovski claims (and the government does not dispute) that the reason behind his failure to appear was the failure of his now ex-wife to forward his mail to the new address. Failure to appear for

---

[1]The Immigration and Naturalization Service has since been reorga-nized and is now called United States Citizenship and Immigration Services.

the adjustment of status interview resulted in INS placing Markovski in removal proceedings. Because Markovski did not receive the notice to appear for the removal hearing, the ex-wife again did not forward the mail, he was ordered removed in absentia.

In the meantime, Markovski obtained employment with Amtrak. Amtrak submitted an I-140 immigrant petition on behalf of Markovski. Markovski then applied for legal permanent resident status based on that petition. While in the process of adjusting his status based on the I-140 petition, Markovski learned of the order of removal entered in absentia. Markovski moved to reopen his case, and the immigration judge consented. However, the IJ denied the application to adjust status, holding that Markovski was precluded from adjusting his status on any basis other than through a petition filed by his ex-wife. The IJ granted Markovski voluntary departure. The BIA affirmed the IJ's decision on November 1, 2005. This petition for review followed.

## II.

The petitioner presents three issues for our review.

1. Whether the IJ and the BIA misapplied 8 U.S.C. § 1255 of the Immigration and Nationality Act;

2. Whether the BIA erred in not dismissing the case due to procedural defects in the Notice to Appear;

3. Whether the BIA erred in not remanding the case due to the IJ's partiality.

## III.

When the BIA affirms the IJ's decision without an opinion, as here, this court reviews the IJ's decision. *Camara v. Ashcroft*, 378 F.3d 361, 366 (4th Cir. 2004). Legal conclusions are reviewed without deference, *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004); however, an agency's interpretation of the applicable statutes is entitled to deference and must be accepted if reasonable. *Chevron,*

*U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). An agency's factual determinations are conclusive unless unreasonable. 8 U.S.C. § 1252(b)(4)(B). Our review is further limited by the REAL ID Act which prohibits judicial review of the denial of discretionary relief to the alien by the Attorney General. 8 U.S.C. § 1252(a)(2)(B). We do retain the authority to pass on the alien's legal and constitutional claims. 8 U.S.C. § 1252(a)(2)(D).

IV.

Markovski's primary argument rests on the proposition that the INA, 8 U.S.C. § 1255, when read as a whole should be interpreted to permit his application to adjust status based on employment. The argument is not convincing.

"Under the most basic canon of statutory construction, we begin interpreting a statute by examining the literal and plain language of the statute." *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir. 1996). The court's inquiry ends with the plain language as well, unless the language is ambiguous. *United States v. Pressley*, 359 F.3d 347, 349 (4th Cir. 2004).

8 U.S.C. § 1255(d) of the INA reads in relevant portion:

> The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101 (a)(15)(K) of this title except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant (or, in the case of a minor child, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101 (a)(15)(K) of this title.

On its face, subsection (d) prohibits an alien who arrived on the K-1 fiancé visa from adjusting his status on any basis whatever save for the marriage to the K-1 visa sponsor. The language of the statute is clear and speaks directly to the petitioner's situation. Our duty is to give the statutory language effect.

Markovski attempts to get around the clear language of subsection (d) by arguing that subsection (i) affords him relief. He is incorrect. Subsection (i) allows for adjustment of status in certain situations "[n]otwithstanding the provisions of subsections *(a) and (c)* of this section." 8 U.S.C. § 1255(i)(emphasis added). As is evident from the plain language of the statute, subsection (i) does not afford any relief from the provisions of subsection (d). On this issue we agree with the Ninth Circuit which has reached that same conclusion in *Kalal v. Gonzales*, 402 F.3d 948 (9th Cir. 2005).

Markovski attempts to distinguish *Kalal* by arguing that the alien in that case never married her sponsoring fiancé and instead married a third party. During oral argument Markovski attempted to bolster that position by citing to INS' interim rule regarding adjustments under subsection (i). See 59 Fed. Reg. 51,091. According to Markovski, the interim rule explicitly excludes from provisions of subsection (i) those immigrants who entered on a K-1 visa but failed to marry their fiancé sponsor. 59 Fed. Reg. 51,091 ("An applicant who was admitted to the United States as a K-1 fiance(e) *but did not marry the United States citizen* who filed the petition, . . . is also barred from adjusting status under section 245 of the Act.")(emphasis added). The rule, however, is silent with respect to aliens in Markovski's situation, i.e., those who did marry their sponsors, but later got divorced prior to the adjudication of their adjustment of status petitions. According to Markovski, this omission is significant and that by implication, he is not excluded from the provisions of subsection (i).

Markovski's claim fails for two reasons. First, as explained above, the language of the statute itself is not ambiguous and bars beneficiaries of the K-1 visa from adjusting status on any basis other than marriage to the petition sponsor. The statute makes no distinction between those aliens who got married and later divorced and those who failed to get married altogether. Second, the sentence on which Markovski relies is not even part of the rule, rather it is explanatory background information. The actual interim rule begins on page 59,095 of the 59th volume of the Federal Register. Furthermore, since the promulgation of the interim rule, it has been amended several times. See 8 C.F.R. § 1245.10 ("History: 59 Fed. Reg. 51095, Oct. 7, 1994, as corrected at 59 Fed. Reg. 53020, Oct. 20, 1994; 62 Fed. Reg.

10312, 10384, March 6, 1997; 62 Fed. Reg. 39417, 39424, July 23, 1997; 62 Fed. Reg. 50999, 51000, Sept. 30, 1997; 62 Fed. Reg. 55152, 55153, Oct. 23, 1997; 66 Fed. Reg. 16383, 16388, Mar. 26, 2001; 68 Fed. Reg. 9824, 9842, 9846, Feb. 28, 2003; 68 Fed. Reg. 10349, 10357, Mar. 5, 2003"). The current version of the rule appears at 8 C.F.R. § 1245.10. The current version does not make any distinctions between those aliens who got married and later divorced and those who failed to get married. Instead the final rule simply omits the discussion of that topic altogether (perhaps relying on the clear language of 8 U.S.C. § 1255(d)). Accordingly, we are of opinion that there is no merit to Markovski's argument.[2]

V.

Markovski's remaining arguments are without merit. Markovski alleges that the Notice to Appear and Certificate of Service were not dated and therefore are procedurally defective. A review of the record, however, establishes that both documents were dated with the date of May 22, 2001. J.A. 329-30.

Finally, Markovski alleges that the IJ was biased against him because during the hearing, the IJ suggested that the government attorney read into the record the regulations applicable to Markovski's case "for the edification of the record." This argument is without merit. The regulations in question are the governing law. Whether or not they become part of the record would not in any way change what the IJ was obligated to consider in reaching his decision. In any event, an IJ is not considered prejudiced unless he demonstrates a personal bias against a specific petitioner. See *Matter of Exame*, 18 I. & N. Dec. 303, 306 (BIA 1982). Asking an attorney to read regulations into the record does not indicate such bias.

---

[2]We also reject Markovski's reliance on *Matter of Zampetis*, 14 I. & N. Dec. 125 (Reg'l Comm'r 1972). *Zampetis* was decided before Congress enacted the prohibition on adjustment of status contained in § 1255(d) and therefore sheds no light on the meaning or applicability of that statutory provision. To the extent that *Zampetis* may contradict the mandate of § 1255(d), it is superceded by statute.

Accordingly, the petition for review is

*DENIED.*