# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2310

_____

| | |
|---|---|
| Irene Neypes Birdsong, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of |
| v. | * an Order of the Board |
| | * of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

_____

Submitted: March 15, 2011
Filed: June 13, 2011

_____

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,* District Judge.

_____

LOKEN, Circuit Judge.

Irene Birdsong, a citizen of the Philippines, was admitted into the United States in December 2001 under a "K-1" nonimmigrant visa, a visa granted to an alien solely "to conclude a valid marriage with [the alien's U.S. citizen fiancé(e)] within ninety days after admission." 8 U.S.C. § 1101(a)(15)(K)(i). A K-1 visa may only be issued after approval of a petition by the alien's fiancé(e). See 8 U.S.C. § 1184(d). Ms. Birdsong remained in this country but did not marry the U.S. citizen who petitioned

_____

*The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, sitting by designation.

on her behalf.  In April 2003, she married another U.S. citizen, her current husband, who filed an I-130 Petition for Alien Relative on her behalf.  The Petition was approved in October 2004.  Ms. Birdsong then filed an I-485 Application to Register Permanent Residence or Adjust Status.  The Application was denied, and the Department of Homeland Security commenced removal proceedings on the ground that Ms. Birdsong failed to comply with the terms of her K-1 visa.  She conceded removability, see 8 U.S.C. § 1227(a)(1)(B), and requested adjustment of status under 8 U.S.C. § 1255(i) based on a good faith marriage to her current husband.

After receiving briefs from the parties, the Immigration Judge (IJ) entered a final order of removal, concluding that Ms. Birdsong is barred from seeking adjustment of status under 8 U.S.C. § 1255[1] by subsection (d).  The Board of Immigration Appeals (BIA) affirmed.  Ms. Birdsong petitions for judicial review of this final agency action.  See 8 U.S.C. § 1252(a)(1).  We have jurisdiction to review questions of statutory interpretation.  8 U.S.C. § 1252(a)(2)(B)(i), (D).  The agency's grant of voluntary departure did not deprive us of jurisdiction over the BIA's alternative final order of removal.  Foti v. INS, 375 U.S. 217, 219 n.1 (1963).  We conclude that the BIA's decision was consistent with agency regulations that reasonably interpret the relevant statutes and therefore deny the petition for review.

**I.**

This appeal raises an issue of statutory construction -- determining the proper relationship between 8 U.S.C. §§ 1255(d) and (i).  Section 1255 is a lengthy statute prescribing the terms upon which various classes of aliens may adjust their status to that of lawful permanent residents of this country.  To frame the issue before us, we quote the relevant provisions of §1255:

---

[1]§ 1255 is commonly referred to as § 245 of the Immigration and Nationality Act.  We will use the more widely available U.S. Code citations in this opinion.

**(a)** The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion . . . if [she meets criteria not here at issue].

**(c)** . . . [S]ubsection (a) of this section shall not be applicable to . . . (8) any alien . . . who has otherwise violated the terms of a nonimmigrant visa.

**(d)** . . . The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101(a)(15)(K) of this title except to that of an alien lawfully admitted to the United States on a conditional basis . . . as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101(a)(15)(K) . . . .

**(i)(1)** Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States [who meets criteria not here at issue] may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.[2]

By its plain text, § 1255(d) appears to bar an alien such as Ms. Birdsong who was admitted under a K-1 nonimmigrant visa from adjusting status under § 1255 because she did not marry her petitioning fiancé. The first two circuits to consider this issue looked no further, concluding that, "[o]n its face, subsection (d) prohibits an alien who arrived on the K-1 fiancé[e] visa from adjusting [her] status on any basis whatever save for the marriage to the K-1 visa sponsor," and that "subsection (i) does not afford any relief from the provisions of subsection (d)." Markovski v. Gonzales, 486 F.3d 108, 110 (4th Cir. 2007); accord Kalal v. Gonzales, 402 F.3d 948, 951-52 (9th Cir. 2005).

_____

[2]Though amendments to § 1255(i) have limited the group of aliens who are eligible for this relief, see 8 U.S.C. § 1255(i)(B)-(C); 8 C.F.R. § 1245.10, Ms. Birdsong's eligibility is not at issue.

Ms. Birdsong argues, however, that § 1255(d) by its terms only bars adjustment under § 1255(a), whereas § 1255(i) creates a freestanding basis by which a K-1 nonimmigrant visa holder may pursue adjustment of status under § 1255. Because failure to marry the petitioning K-1 fiancé put her in a class of aliens described in § 1255(c)(8), the argument continues, Ms. Birdsong is eligible for adjustment of status by the plain language of § 1255(i), and we must remand for a determination of whether the Attorney General will grant this discretionary relief. Because the Fourth Circuit and the Ninth Circuit erred in ignoring the plain language of § 1255(i), Ms. Birdsong would have us reject their reading of § 1255(d).

We are thus confronted with conflicting plain-language interpretations of these two statutes. The Tenth Circuit confronted the same conflict in Zhang v. Holder, 375 F. App'x 879, 884-86 (10th Cir. 2010) (unpublished), cert. denied, 131 S. Ct. 1468 (2011). After carefully surveying the decisions in Kalal and Markovski and the contrary interpretation of § 1255(i) urged by Ms. Birdsong in this case, the court was "unable to conclude that the statutory language is clear and unambiguous with respect to whether a K-1 visa holder is restricted from obtaining adjustment of status under § 1255 except as provided in subsection (d)." Id. at 885. Applying the Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984), the court rejected both plain-language approaches and upheld the denial of adjustment of status under § 1255(i) because the Attorney General's regulations that "permit a K-1 visa holder to apply for adjustment of status only based upon marriage to the petitioning United States citizen fiancé(e)" are reasonable and a permissible construction of the statute. Zhang, 375 F. App'x at 885.

On appeal, ignoring the decision in Zhang altogether, Ms. Birdsong concedes that she is ineligible for adjustment of status under 8 C.F.R. § 1245.1(c)(6) but argues that § 1255(i) is "clear on its face" and a regulation may not contradict the plain language of the statute. We agree with the general proposition but disagree that the plain language of § 1255(i) answers the question before us. In considering whether

-4-

a statute is clear and unambiguous under <u>Chevron</u>, the question is whether § 1255(i) "speak[s] with the precision necessary to say definitively whether it applies" to Ms. Birdsong's application for adjustment of status. <u>United States v. Eurodif S.A.</u>, 129 S. Ct. 878, 888 (2009). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843. The Court has also noted "that judicial deference to the Executive Branch is especially appropriate in the immigration context" because of its impact on foreign relations. <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999); <u>see</u> 8 U.S.C. §§ 1103(a)(1), 1184(a).

We find it helpful to view the plain-language issue in historical perspective. Subsection 1255(d) was enacted as part of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 2(e), 100 Stat. 3537. That statute eliminated the streamlined, nearly automatic adjustment-of-status procedure for K-1 visa holders under 8 U.S.C. § 1184(d). Instead, to combat marriage fraud, Congress "incorporated the alien fiancé(e)'s adjustment of status into the statutory scheme" under § 1255. <u>Sesay</u>, 25 I. & N. Dec. 431, 437 (2011). Under § 1255(d), unlike the prior regime, the K-1 visa holder must establish that she deserves a discretionary grant of adjustment of status by the Attorney General under § 1255(a), "can only adjust on the basis of the marriage to the fiancé(e) petitioner," must marry the petitioner within 90 days of arrival, and must establish the marriage is bona fide during a two-year conditional adjustment period. <u>Id.</u> at 442.

Subsection 1255(i), on the other hand, was added to the statute in 1994 as part of an annual Department of State appropriations bill. As explained by the Department of Justice in promulgating a contemporaneous interim regulation:

> The requirements of [8 U.S.C. §§ 1255(a) and (c)] were established to discourage intending immigrants from moving to the United States before becoming fully eligible for permanent residence and bypassing

the orderly immigrant visa issuance process abroad. These requirements have caused many persons who are in the United States to be unable to adjust status in this country. . . . By virtue of the requirements of [8 U.S.C. §§ 1255(a) and (c)], these persons were putatively required to leave the United States and United States consuls abroad have been burdened with immigrant visa issuance that would not otherwise have been necessary.

. . . [Subsection 1255(i)] temporarily lifts many of the restrictions on adjustment of status under section [1255] on applications filed on or after October 1, 1994, although it does not affect persons adjusting under other sections of the law. . . .

\* \* \* \* \*

[Subsection 1255(i)] also does not waive several other grounds of ineligibility for adjustment of status under [section 1255]. . . . <u>An applicant who was admitted to the United States as a K-1 fiancé(e) but did not marry the United States citizen who filed the petition . . . is also barred from adjusting status under [section 1255]</u>.

Adjustment of Status to That of Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 59 Fed. Reg. 51091, 51092-93, 1994 WL 543334 (Oct. 7, 1994) (emphasis added). Consistent with this explanation, the interim rule modified 8 C.F.R. § 245.1(c)(6) to provide, as the final regulations now provide:

(c) *Ineligible aliens*. The following categories of aliens are ineligible to apply for adjustment of status to that of lawful permanent resident alien under [8 U.S.C. § 1255]:

\* \* \* \* \*

(6) Any alien admitted to the United States as a nonimmigrant defined in section [1101(a)(15)(K)], unless:

(i) In the case of a K-1 [fiancé(e)] . . . the alien is applying for adjustment of status based upon the marriage of the K-1 [fiancé(e)] which was contracted within 90 days of entry with the United States citizen who filed a petition on behalf of the K-1 [fiancé(e)].

8 C.F.R. §§ 245.1(c)(6)(i), 1245.1(c)(6)(i).

This chronological perspective, plus the fact that § 1255(a) is the lead and dominant subsection and § 1255(i) was later added for a limited purpose, support the conclusion of the Ninth Circuit and the Fourth Circuit that § 1255(d) plainly bars Ms. Birdsong from adjusting her status. Though Ms. Birdsong arguably comes within the purview of § 1255(i) because she falls within the catchall class of aliens who have "otherwise violated the terms of a nonimmigrant visa," § 1255(c)(8), she falls squarely within the far more specific limitation in § 1255(d). "[A] basic principle of statutory construction [is] that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned." HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981). Nonetheless, it would have been easy for Congress in 1994 to resolve all doubt by adding a cross-reference to subsection (i) in subsection (d), or, conversely, by adding a cross reference to subsection (d) in subsection (i) had it intended to make Ms. Birdsong eligible for § 1255(i) relief without regard to § 1255(d). But Congress added neither clarification. Instead, it was silent on the precise question before us. In these circumstances, we are inclined to agree with the Tenth Circuit that the two subsections are ambiguous for purposes of the first part of the Chevron analysis.

Turning therefore to the second part of the Chevron analysis, we agree with the Tenth Circuit that 8 C.F.R. §§ 245.1(c)(6)(i) and 1245.1(c)(6)(i) are a permissible construction of § 1255 that is entitled to Chevron deference. These provisions, which bar Ms. Birdsong as a K-1 visa holder from adjusting her status on any basis other than her marriage to the U.S. citizen who petitioned on her behalf, are consistent with

-7-

the "carefully crafted scheme that Congress created for the purpose of avoiding marriage fraud." Kalal, 402 F.3d at 952. Of course, Congress could have permitted some K-1 visa holders to avoid its antifraud restrictions by adjusting their status under § 1255(i) after entry, but the Attorney General reasonably concluded that § 1255(i) did not reflect an intent to do so.

## II.

Ms. Birdsong further argues that the IJ violated her right to due process by failing to hold a hearing on the merits of her discretionary adjustment-of-status application. This contention is without merit. After giving counsel for Ms. Birdsong ample opportunity to brief this issue of statutory construction, the IJ and the BIA determined, correctly in our view, that she had conceded removability and was ineligible for adjustment of status as a matter of law. No further hearing was needed. Had we reversed the BIA's determination of ineligibility, we would have remanded for whatever hearing on the discretionary adjustment-of-status issues might then have been appropriate.

We deny the petition for review.

_____