# Matter of Alfred Kebbie SESAY, Respondent

*Decided March 17, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under section 245(d) of the Immigration and Nationality Act, 8 U.S.C. § 1255(d) (2006), a fiancé(e) visa holder can only adjust status based on the marriage to the fiancé(e) petitioner. *Matter of Zampetis*, 14 I&N Dec. 125 (Reg. Comm'r 1972), superseded.

(2) A fiancé(e) visa holder whose bona fide marriage to the fiancé(e) visa petitioner is more than 2 years old at the time the adjustment application is adjudicated is not subject to the provisions for conditional resident status under section 216 of the Act, 8 U.S.C. § 1186a (2006).

(3) A fiancé(e) visa holder satisfies the visa eligibility and visa availability requirements of section 245(a) of the Act on the date he or she is admitted to the United States as a K-1 nonimmigrant, provided that the fiancé(e) enters into a bona fide marriage with the fiancé(e) petitioner within 90 days.

(4) A fiancé(e) visa holder may be granted adjustment of status under sections 245(a) and (d) of the Act, even if the marriage to the fiancé(e) visa petitioner does not exist at the time that the adjustment application is adjudicated, if the applicant can demonstrate that he or she entered into a bona fide marriage within the 90-day period to the fiancé(e) visa petitioner.

FOR RESPONDENT: Thomas A. Elliot, Esquire, Washington, D.C.

FOR THE DEPARTMENT OF HOMELAND SECURITY: Billy J. Sapp, Senior Attorney

BEFORE: Board Panel: NEAL, Acting Chairman; GREER and MALPHRUS, Board Members.

GREER, Board Member:

This case addresses the issue whether an alien who entered the United States on a nonimmigrant K-1 fiancé(e) visa and met the condition of timely marrying the petitioning spouse remains eligible to adjust status when the marriage has ended. We hold that such an alien is eligible for adjustment. Consequently, we will sustain the respondent's appeal and remand the record to give him an opportunity to renew his application for adjustment of status

under sections 245(a) and (d) of the Immigration and Nationality Act, 8 U.S.C. §§ 1255(a) and (d) (2006), before the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Sierra Leone, met his future United States citizen wife in 1997 when they were both studying in Addis Ababa, Ethiopia. She filed a Petition for Alien Fiancé(e) (Form I-129F) on the respondent's behalf, which was approved by the former Immigration and Naturalization Service ("INS")[1] on October 27, 1999. The respondent was issued a K-1 nonimmigrant fiancé visa pursuant to section 101(a)(15)(K)(i) of the Act, 8 U.S.C. § 1101(a)(15)(K)(i) (2000), on February 4, 2000. On April 18, 2000, the respondent was admitted to the United States as a fiancé for a 90-day period. He married the fiancée petitioner on April 28, 2000. The couple had a son, born March 29, 2001. On June 20, 2001, the respondent filed an adjustment of status application with the INS.

On November 8, 2002, the INS mistakenly denied the respondent's adjustment application because it had not adjudicated the application within 2 years of his April 28, 2000, marriage. The couple divorced on June 5, 2003. In a Notice to Appear dated October 29, 2003, the Department of Homeland Security ("DHS") alleged that the respondent was in the United States in violation of law pursuant to section 237(a)(1)(B) of the Act, 8 U.S.C. § 1227(a)(1)(B) (2000). On November 24, 2004, the respondent married his current United States citizen spouse. She filed a family-based immigrant visa petition, Form I-130 (Petition for Alien Relative), on the respondent's behalf, which the United States Citizenship and Immigration Services ("USCIS") approved on July 26, 2005.

In removal proceedings, the respondent conceded removability and sought to renew his adjustment application based on the approved fiancé petition filed by his first wife. He also filed an adjustment application based on the approved I-130 filed by his current wife. In a decision dated April 24, 2007, the Immigration Judge denied both adjustment applications. He denied adjustment based on the approved I-130 filed by the second wife because the

---

[1] On March 1, 2003, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, the functions of the Immigration and Naturalization Service were transferred from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"). The United States Citizenship and Immigration Services, an agency within the DHS, is authorized to provide immigration and naturalization benefits to aliens, including the adjudication of adjustment of status applications. As part of this restructuring, the regulations were separated into DHS and DOJ counterparts. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824 (Feb. 28, 2003).

respondent, having been admitted on a fiancé visa, could only adjust status as a result of the marriage to the fiancée petitioner. The Immigration Judge denied the adjustment application based on the first marriage for lack of jurisdiction because the respondent was no longer married to the fiancée petitioner. The respondent has appealed from the Immigration Judge's decision.[2]

## II. ISSUES

### A. Fiancé(e) Adjustment Based on a Second Marriage

The respondent now concedes that he cannot adjust status based on the I-130 visa petition filed by his second wife. We agree, because the language of section 245(d) of the Act clearly precludes fiancé(e)s from adjusting status on any basis other than marriage to the fiancé(e) petitioner. *See Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007) (stating that the language of section 245(d) of the Act is clear insofar as it bars K-1 visa holders from adjusting status on any basis other than marriage to the fiancé(e) petitioner); *see also Kalal v. Gonzales*, 402 F.3d 948, 951 (9th Cir. 2005) (same).

### B. Jurisdiction Over Fiancé(e) Adjustment

On appeal, the DHS acknowledges that the INS improperly denied the respondent's adjustment application in 2002, because there is no requirement that a fiancé(e) adjust status within 2 years of the marriage. We agree with the parties that the Immigration Judge has jurisdiction to adjudicate the renewal of the respondent's fiancé adjustment application under section 245(a) of the Act in removal proceedings. *See* 8 C.F.R. §§ 245.2(c), 1245.2(c) (2010).

### C. Dissolution of a Fiancé(e)'s Marriage

The remaining issue is whether a fiancé(e) visa holder who timely marries the fiancé(e) petitioner remains eligible to adjust status outside the conditional residence period after dissolution of their bona fide marriage.[3]

---

[2] The parties do not dispute the respondent's removability, so we need not address that issue.

[3] The Act lists three nonimmigrant categories under section 101(a)(15)(K): (i) fiancé(e)s seeking to enter the United States to conclude a valid marriage; (ii) aliens married to a United States citizen who has filed a family-based immigrant visa petition that is pending

(continued...)

The resolution of this issue depends upon whether the respondent can satisfy the requirements of sections 245(a) and (d) of the Act. These and other statutory provisions governing a fiancé(e)'s adjustment of status have undergone substantial revision over the years. The result is an incomplete statutory construct, requiring us to fill a significant statutory void and interpret ambiguous language.[4] We do so primarily by reference to the law as originally enacted, because the changes to it were designed to address marriage fraud, not the issue presented here regarding termination of an apparently bona fide marriage. Further, the original regulatory and statutory petition procedure for fiancé(e) adjustments remains largely intact. Thus, the former law serves as a guide to congressional intent in this case. We also rely on longstanding consular practice, in addition to DHS guidance interpreting the effect of part of the statutory changes.

## III. STATUTORY AMBIGUITIES FOR FIANCÉ(E) ADJUSTMENT

The statutory gaps and ambiguities arise principally from amendments that eliminated fiancé(e) adjustments under former section 214(d) of the Act 8 U.S.C. § 1184(d) (1970), and incorporated them into the adjustment scheme under sections 245(a) and (d) of the Act. First, section 245(a) requires applicants to establish immigrant visa eligibility and availability. However, Congress did not specify the statutory mechanism that would allow nonimmigrant fiancé(e)s to qualify as immigrants. Unless we construe the statute to allow these nonimmigrants to adjust status, we face the absurd result of disqualifying all fiancé(e) visa holders from statutory eligibility. Such a result would clearly be at odds with the entire basis for fiancé(e) visa status and current administrative practice.

---

(...continued)

adjudication; and (iii) minor children accompanying or following to join aliens described in clauses (i) and (ii). The regulations classify the fiancé(e) visa category as K-1 and the minor children accompanying or following to join the fiancé(e) as K-2. The spouse category is classified for visa purposes as K-3, with the minor children designated as K-4. 8 C.F.R. §§ 214.1(a)(1)(v), (2) (2010). This decision only addresses the K-1 nonimmigrant fiancé(e) visa holders, whom we refer to as fiancé(e)s.

[4] Filling these statutory gaps might be better accomplished through clarifying statutory amendments or rulemaking. However, we are required to resolve the dispositive issues in cases before us.

Second, family-based immigrants are not admissible for adjustment purposes under section 245(a) of the Act if the marriage no longer exists. *See, e.g.*, *Matter of Bark*, 14 I&N Dec. 237, 240 (BIA 1972) (explaining that under section 204(e) of the Act, 8 U.S.C. § 1154(e) (1970), visa petition procedures do not allow admission if, at the time of arrival or adjustment of status, the alien is not entitled to the immigrant visa classification accorded to him by the visa petition), *rev'd on other grounds*, *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975); *see also* 8 C.F.R. § 205.1(a)(3) (2010) (providing for the automatic revocation of an immigrant visa petition if the marriage is terminated before adjustment). In the past, former section 214(d) of the Act did not require the fiancé(e)'s qualifying marriage to be intact at the time of adjustment, provided that the fiancé(e) was otherwise admissible. Thus, the effect of dissolution of the fiancé(e)'s marriage on admissibility is unclear where fiancé(e) status is not based on an immigrant visa petition or classification.

Third, section 245(d) contemplates that fiancé(e)s will apply for conditional permanent residence under section 216 of the Act, 8 U.S.C. § 1186a (2006), based solely on marriage to the fiancé(e) petitioner. In this case, the respondent's adjustment application was adjudicated outside the relevant 2-year time frame governing conditional permanent residents. Therefore, whether the respondent's adjustment application remains subject to the provisions of section 216 is not clear.

Accordingly, to resolve these questions, we examine the statutory history of relevant enactments to aid in determining whether nonimmigrant fiancé(e)s (1) can satisfy the immigrant visa eligibility and availability requirements of section 245(a); (2) remain admissible despite divorce from the fiancé(e) petitioner; and (3) are uniformly affected by the conditional permanent resident requirements described in section 245(d) of the Act. Finally, we examine the discretionary aspect of the fiancé(e) adjustment application.

## IV. STATUTORY HISTORY OF PROVISIONS GOVERNING FIANCÉ(E) ADJUSTMENT

### A. Original 1970 Statutory Scheme for Fiancé(e)s

In 1970, Congress created a new nonimmigrant category for fiancé(e)s of United States citizens by adding section 101(a)(15)(K) to the Act.[5] *See* Act of

---

[5] Section 101(a)(15)(K) of the Act, as it was enacted in 1970, included the following in the definition of a nonimmigrant:

(continued...)

Apr. 7, 1970, Pub. L. No. 91-225, § 1(b), 84 Stat. 116, 116. Congress did so "to resolve the problem presented by fiancées of American citizens who seek to enter the United States to be married. Since they intend to remain permanently in the United States, they cannot qualify as bona fide nonimmigrants and, until married, immigrant visas may not be available to them." *See* H.R. Rep. No. 91-851, at 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 2750, 2752, 1970 WL 5815 at \*\*2.

Under the statute as it was originally enacted, fiancé(e)s adjusted status under section 214(d) of the Act, which provided that if the marriage between the petitioner and the alien fiancé(e) occurred within 3 months after the alien's entry and he or she was found otherwise admissible, the Attorney General was required to record the alien's lawful admission for permanent residence upon payment of the required visa fees.[6] Pursuant to the regulations then in effect, the alien fiancé(e) had to file an adjustment application (Form I-485) with the INS District Director who had jurisdiction over the alien's place of residence. 8 C.F.R. § 245.2(d) (1971). At that time, we likened section 214(d) applicants to immediate relatives, which are defined in section 201(b)(2)(A)(i) of the Act,

---

(...continued)

　　　an alien who is the fiancée or fiancé of a citizen of the United States and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after entry, and the minor children of such fiancée or fiancé  accompanying him or following to join him.

[6] Section 214(d) of the Act, which was enacted by section 3(b) of the Act of April 7,1970, 84 Stat. at 117, provided as follows:

　　　A visa shall not be issued under the provisions of section 101(a)(15)(K) until the consular officer has received a petition filed in the United States by the fiancée or fiancé of the applying alien and approved by the Attorney General. The petition shall be in such form and contain such information as the Attorney General shall, by regulation, prescribe. It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival. In the event the marriage with the petitioner does not occur within three months after the entry of the said alien and minor children, they shall be required to depart from the United States and upon failure to do so shall be deported in accordance with sections 242 and 243. In the event the marriage between the said alien and the petitioner shall occur within three months after the entry and they are found otherwise admissible, the Attorney General shall record the lawful admission for permanent residence of the alien and minor children as of the date of the payment of the required visa fees.

8 U.S.C. § 1151(b)(2)(A)(i) (2006). *See Matter of Dixon*, 16 I&N Dec. 355, 357 n.2 (BIA 1977).

### B. 1986 Amendments and the Existing Statutory Scheme for Fiancé(e)s

The Immigration Marriage Fraud Amendments Act of 1986, Pub. L. No. 99-639, 100 Stat. 3537 ("IMFA"), added to the Act an array of provisions that were expressly designed to combat marriage fraud and other immigration fraud. With regard to fiancé(e)s, the IMFA modified section 214(d) and added section 245(d) to the Act to make four important changes to the fiancé(e) adjustment process.[7]  IMFA §§ 2(e), 3(a)-(c), 100 Stat. at 3542. First, the fiancé(e) visa petition could not be approved unless the alien and his or her United States citizen fiancé(e) met in person within the 2-year period preceding the filing of the petition.[8] Congress expected this provision to deter the "many abuses of the 'mail order bride' business." *See* S. Rep. No. 99-491, at 9 (1986) (report of the Committee on the Judiciary) ("Senate Report").

Second, the IMFA changed the statutory section governing alien fiancé(e) acquisition of lawful permanent resident status. It eliminated the streamlined adjustment procedure under section 214(d) of the Act, which was nearly automatic for fiancé(e)s facing no substantive ground of inadmissibility. Instead, the IMFA incorporated the alien fiancé(e)'s adjustment of status into the statutory scheme under section 245 of the Act.

Third, section 245(d) provides that a fiancé(e) can now only adjust status based on the marriage to the fiancé(e) petitioner. Thus, the holding in *Matter of Zampetis*, 14 I&N Dec. 125 (Reg. Comm'r 1972), that a K-1 nonimmigrant fiancé could establish adjustment eligibility based on to his marriage to a

---

[7] Section 245(d) of the Act currently provides as follows:

> The Attorney General may not adjust, under subsection (a), the status of an alien lawfully admitted to the United States for permanent residence on a conditional basis under section 216. The Attorney General may not adjust, under subsection (a), the status of a nonimmigrant alien described in section 101(a)(15)(K) except to that of an alien lawfully admitted to the United States on a conditional basis under section 216 as a result of the marriage of the nonimmigrant (or, in the case of a minor child, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 101(a)(15)(K).

[8] This requirement may be waived under limited circumstances. *See* section 214(d)(1) of the Act; 8 C.F.R. § 214.2(k)(2) (2010).

spouse other than the I-129F petitioner, was superseded by the enactment of section 245(d). *See Markovski v. Gonzales*, 486 F.3d at 111 n.2.

Fourth, fiancé(e)s are subject to conditional resident status under section 216 of the Act. Like other "alien spouses" that are defined in section 216(g)(1) of the Act, fiancé(e) visa holders are lawfully admitted to the United States on a conditional basis under section 216. Two years after obtaining conditional permanent resident status, the couple must seek to waive the conditions on such status. Specifically, the alien spouse and the United States citizen spouse jointly file a petition in which they affirm that they are still married and that they entered into a valid marriage, not one to obtain immigration benefits. *See generally Matter of Stowers*, 22 I&N Dec. 605, 608-09 (BIA 1999). If the alien is unable to file a joint petition, a waiver of the requirement may be available under section 216(c)(4) of the Act, even if the marriage has ended. *Id.* at 609-10.

## V. INTERPRETATION OF FIANCÉ(E) ADJUSTMENT

### A. Section 245(a) of the Act

With the 1970 law and the 1986 amendments as a backdrop to our discussion, we turn to the current governing statute for fiancé(e) adjustment at section 245(a) of the Act, which provides, in part, as follows:

> The status of an alien who was . . . admitted . . . into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an *immigrant visa* and is admissible to the United States for permanent residence, and (3) an *immigrant visa* is immediately available to him at the time his application is filed.

(Emphasis added.)

Despite incorporating fiancé(e) adjustments into section 245, Congress did not alter the prior procedure through which fiancé(e)s were admitted to the United States on a nonimmigrant visa or specify a mechanism through which the fiancé(e) could satisfy the "immigrant visa" requirements of section 245(a). To avoid the absurdity of rendering the provision completely unavailable to fiancé(e) entrants, we construe the statute to allow fiancé(e)s to continue to adjust status, even though they cannot satisfy the literal terms of sections 245(a)(2) and (3), which require immigrant visa eligibility and availability.

As originally envisioned, fiancé(e) visa holders were recognized as the functional equivalents of immediate relatives for purposes of immigrant visa eligibility and availability. *See Matter of Dixon*, 16 I&N Dec. at 357 n.2. The

1986 amendments did not alter that treatment of fiancé(e)s. Accordingly, consistent with historical practice, we conclude that fiancé(e) visa holders remain similarly situated to immediate relatives in satisfaction of the section 245(a) immigrant visa requirements.

Since the creation of the K-1 visa, a fiancé(e) who entered the United States and married the United States citizen "would be classifiable as an 'immediate relative,'" because the fiancé(e) adjusts status as the spouse of a United States citizen. *See* H.R. Rep. No. 91-851, at 8, 1970 U.S.C.C.A.N. at 2758, 1970 WL 5815 at **8; *see also Matter of Dixon*, 16 I&N Dec. at 357 n.2 (noting that lawful permanent residence is accorded to a section 214(d) applicant as an immediate relative). Consistent with this analogy to immediate relatives, consular officers are instructed to evaluate an alien's eligibility for a K-1 visa as if it were an immigrant visa. Similarly, consular officers are to determine a fiancé(e)'s eligibility for a waiver of inadmissibility as if the alien was the immigrant spouse of a United States citizen. *See* Vol. 9, Foreign Affairs Manual § 41.81 note 9.1 (CT: VISA-756; 7-27-2005).

On appeal, the DHS does not dispute the analogy of fiancé(e)s to immediate relatives with regard to immigrant visa eligibility and availability. Rather, the DHS would extend the analogy to include admissibility, arguing that the dissolution of the qualifying marriage results in an alien's inadmissibility for section 245(a) adjustment, as would be the case for immediate relatives. *See Matter of Bark*, 14 I&N Dec. 237. Yet, the fiancé(e)'s adjustment application is and has always been predicated on the nonimmigrant I-129F visa petition.

Further, there is no requirement for a Form I-130 immigrant visa petition to be filed under section 204 of the Act for the fiancé(e), as is the case for family-based immigrants, including spouses admitted under section 101(a)(15)(K)(ii) of the Act. The regulations define different events as terminating these respective petitions. The regulation at 8 C.F.R. § 205.1(a)(3) provides that an I-130 immigrant visa petition is automatically revoked if the marriage is legally terminated "before the decision on his or her adjustment application becomes final." In contrast, under 8 C.F.R. § 214.2(k)(5) (2010), the I-129F nonimmigrant petition is automatically terminated if the petitioner dies or files a written withdrawal of the petition *before* the beneficiary arrives in the United States. There is no mention in the regulations of the consequences of a valid marriage being terminated.[9]

This distinction makes sense when we consider the time when the fiancé(e) visa holder, as opposed to an immigrant visa holder, satisfies the requirements

---

[9]  In contrast, the nonimmigrant status of an alien admitted on a K-3 visa under section 101(a)(15)(K)(ii) of the Act is automatically terminated by a divorce from the United States citizen spouse. 8 C.F.R. § 214.2(k)(11)(iv).

for section 245(a) adjustment. In our view, the section 245(a) eligibility requirements are satisfied at the time the fiancé(e) is admitted to the United States on the K-1 visa, conditioned on a subsequent, timely marriage to the fiancé(e) petitioner. The date of admission best marks visa eligibility and availability, because events that may occur between visa issuance and admission could extinguish the visa under 8 C.F.R. § 214.2(k)(5). Further, visa eligibility remains subject to reexamination by the inspecting officer at the port of entry when the fiancé(e) seeks admission.

Thus, the fiancé(e) visa holder is not precluded from adjusting by the terms of section 245(a) or the applicable regulations—even if a marriage that was timely and bona fide no longer exists—if he or she is not otherwise inadmissible under section 212(a) of the Act, 8 U.S.C. § 1182(a) (2006), and merits a grant of adjustment in the exercise of discretion. The fiancé(e) must still demonstrate the underlying bona fides of the qualifying marriage. *See, e.g.*, *Matter of Boromand*, 17 I&N Dec. 450 (BIA 1980) (holding that a marriage that is valid at inception is valid for immigration purposes, even if the parties are separated and the marriage is no longer viable); *see also Bark v. INS*, 511 F.2d 1200 (finding that the conduct of the parties after marriage is relevant only to the extent it bears upon their subjective state of mind at the time they were married).

## B. Fiancé(e) Adjustment Conditioned by Section 245(d) of the Act

In addition to examining the respondent's eligibility to adjust under section 245(a), we must also interpret and apply the requirements of section 245(d). The statutory language of section 245(d) places two requirements on fiancé(e) adjustment applicants. First, fiancé(e)s may not adjust except on a conditional basis under section 216 of the Act. Second, they can only adjust based on the marriage to the fiancé(e) petitioner.

After the enactment of the IMFA, the INS General Counsel examined the question whether a fiancé(e) would be subject to conditional resident status if the adjustment application was filed within 2 years of the marriage to the fiancé(e) petitioner, but the application was not adjudicated until more than 2 years after the marriage. The INS General Counsel interpreted section 245(d) of the Act to allow a fiancé(e) whose valid marriage was more than 2 years old to adjust status without the section 216 conditions, provided the fiancé(e)'s adjustment application was filed within 2 years of the qualifying marriage. *See* Genco Op. No. 93-39, 1993 WL 1503986 (INS) (finding that alien spouses could adjust status unconditionally if, at the time of adjustment, the marriage to the United States citizen was more than 2 years old). The General Counsel opined that if the marriage is over 2 years old and bona fide,

the legislative intent underlying the creation of conditional resident status is satisfied, so that there is no need for conditional status. *Id.*

We agree with this interpretation and conclude that the DHS has adopted a reasonable construction of potentially conflicting statutory directions. There is some tension between the seemingly mandatory terms of section 245(d) regarding the application of section 216 to fiancé(e)s and the definitional terms of section 216(g), which provides that adjustment applicants, including fiancé(e)s, are subject to the conditions only if the qualifying marriage is less than 2 years old at the time of adjustment. It is difficult to interpret 245(d) as applying to fiancé(e) adjustment applicants outside the 2-year time period in light of section 216(g)(1)(B), which provides that fiancé(e)s are subject to section 216 "by virtue of a marriage which was entered into less than 24 months before the date the alien" obtains status as an alien lawfully admitted for permanent residence.

The language of section 245(d) is also unclear about whether the marriage to the fiancé(e) petitioner must exist on the date of adjudication or whether the fact that a valid marriage once existed is sufficient. The statutory and regulatory language does not prohibit adjustments based on a valid marriage that is no longer intact, unlike other categories of family-based spouses, including those under section 101(a)(15)(K)(ii) of the Act.

### C.  Summary of Fiancé(e)'s Eligibility for Adjustment Under Sections 245(a) and (d) of the Act

We determine that a fiancé(e) visa holder is eligible to adjust under section 245(a) of the Act if, at the time of adjustment, the applicant can demonstrate that he or she entered into a valid marriage to the fiancé(e) petitioner within the 90-day period, provided that the requirements of section 216 do not apply. The statute does not require that the marriage exist at the time that the application is adjudicated outside the section 216 time frame. Also, a divorce before adjustment does not terminate the underlying I-129F petition. Like other adjustment applicants, the fiancé(e) must establish that he or she is admissible to the United States and that adjustment should be granted in the exercise of discretion.

Historically, the fiancé(e) was admitted pursuant to a nonimmigrant visa petition that was processed like an immigrant visa petition and could adjust if he or she entered into a bona fide marriage within 90 days and was not otherwise inadmissible. We find nothing in the IMFA's insertion of fiancé(e) adjustment into the section 245 adjustment scheme to alter this process, beyond explicitly adding both the section 216 requirements and a discretionary element and limiting the avenue to adjustment to the fiancé(e) petition.

Our interpretation is further supported by the legislative history of the IMFA. The Senate Report specifically states that the IMFA was introduced to prevent marriage fraud and to preclude the easy entry of "mail order brides" into the United States. *See* S. Rep. No. 99-491, at 2, 9. In practice, a fiancé(e)'s marriage is evaluated for fraud more often than the marriage of other alien spouses. The fiancé(e) and the United States citizen must establish their bona fide intent to marry when the I-129 is filed, when the fiancé(e) applies for the K-1 nonimmigrant visa, and when the fiancé(e) applies for admission to the United States. In addition, they must establish the marriage is bona fide when the fiancé(e) applies for adjustment of status and, if subject to section 216 conditional residence, when he or she petitions to waive the conditions on residence. Finally, the fiancé(e) must establish that he or she deserves a grant of adjustment in discretion. The fiancé(e) adjustment applicant can only adjust on the basis of the marriage to the fiancé(e) petitioner. Unlike other categories of adjustment applicants, who can adjust through another family relationship or an employer, there is no other option for the fiancé(e). Given these requirements, we believe that our resolution of this issue comports with the concerns about ensuring that only those applicants who entered into a bona fide marriage can adjust.

## VI. FEDERAL COURT INTERPRETATION

Our conclusions regarding fiancé(e) adjustment are consistent with the reasoning employed by at least two Federal courts of appeals. In *Choin v. Mukasey*, 537 F.3d 1116 (9th Cir. 2008), the fiancée was admitted to the United States on a K-1 visa, married her United States citizen fiancé within 90 days, and filed her adjustment application within the conditional residence period. By the time the USCIS adjudicated the adjustment application more than 2 years later, she had divorced the fiancé petitioner. The court framed the issue as "whether Choin's divorce after over two years of marriage made her ineligible to adjust to conditional permanent resident." *Id.* at 1119.

According to the Ninth Circuit, the language of section 245(d) of the Act providing that a fiancé(e) cannot adjust status except on a conditional basis pursuant to section 216 of the Act "as the result of the marriage" is ambiguous. *Id.* at 1119-20. The court found that the phrase "as the result of the marriage" could be interpreted two ways. It could mean that fiancé(e)s cannot adjust if they are no longer married at the time the adjustment application is adjudicated. Or it could mean that they could adjust even if no longer married, so long as the adjustment application is premised on the marriage to the fiancé(e) petitioner.

The court examined the purpose and context of section 245(d) of the Act and determined that the latter interpretation was correct. The court found "nothing

442

in the plain language of § 245(d) suggesting that an application that was valid when submitted should be automatically invalid when the [fiancé(e)'s] marriage ends by divorce two years later." *Id.* at 1121. The court concluded that to require the marriage to remain in existence until the adjustment application is adjudicated is to read a "durational requirement" into the qualifying marriage. *Id.* Therefore, Choin was eligible for adjustment under section 245(d) even though she was no longer married to the fiancé petitioner at the time her adjustment application was adjudicated. *Id.* at 1120-21.

In *Carpio v. Holder*, 592 F.3d 1091 (10th Cir. 2010), the Tenth Circuit adopted the *Choin* analysis. *Carpio* involved a child accompanying or following to join the fiancée visa holder. At the time Carpio was admitted to the United States on a K-2 visa, he was under 21 years old. His mother timely married the fiancé petitioner. The USCIS did not complete adjudication of his adjustment application until more than 2 years after it was filed, when Carpio was over 21 and no longer qualified as a child. In rejecting the date the adjustment application was adjudicated as determinative of the child's age for adjustment eligibility, the court found the Ninth Circuit's reasoning in *Choin* to be "equally applicable." *Id.* at 1101.

## VII. DISCRETIONARY FACTORS FOR K-1 ADJUSTMENT APPLICATIONS

In making discretionary determinations, we balance the equities and the adverse factors presented to decide whether an alien merits a favorable exercise of discretion. *See Matter of A-M-*, 25 I&N Dec. 66, 76-77 (BIA 2009) (stating that the discretionary factors considered should be relevant to the nature and purpose of the specific application at issue). In *Matter of Arai*, 13 I&N Dec. 494, 495-96 (BIA 1974), which addressed general discretionary factors applicable to adjustment of status, we observed that "[i]t is difficult and probably inadvisable to set up restrictive guide lines for the exercise of discretion. Problems which may arise in applications for adjustment must of necessity be resolved on an individual basis." The "extraordinary discretionary relief" of adjustment "can only be granted in meritorious cases." *Matter of Blas*, 15 I&N Dec. 626, 630 (BIA 1974; A.G. 1976). Immigration Judges and this Board have wide latitude in addressing discretion. *See generally INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996) (stating that statutory language establishing certain prerequisites to eligibility does not impose limitations on the factors that may be considered in determining who should be granted discretionary relief).

Aliens seeking adjustment under section 245(a), conditioned by section 245(d), do so based on the marriage to a fiancé(e) petitioner. The mere fact that the marriage has been terminated is not automatically an adverse factor

and is not so considered unless circumstances surrounding that marriage indicate otherwise. In particular, reasons for the divorce and subsequent developments involving that relationship could be unfavorable if, for example, abuse or deception occurred or, where children are involved, parental obligations have not been met. Issues about the validity of the qualifying marriage are also relevant to the exercise of discretion, and the fact of the divorce and its timing may raise questions about the bona fides of that marriage.

The record before us does not contain any negative implications about the respondent's marriage to the fiancée petitioner. He is now married to another United States citizen. The nature and quality of that relationship, even though it is another marriage, is a relevant consideration in discretion, just as are any other pertinent facts that exist at the time of adjustment.

## VIII. CONCLUSION

The respondent completed the required steps in the fiancé adjustment process. He was not subject to the provisions of section 216 because his marriage was more than 2 years old when his adjustment application was adjudicated. He established his prima facie eligibility for adjustment of status based on his marriage to the fiancée petitioner. The respondent seeks to renew his adjustment application premised on his first marriage, which the INS improperly denied. Based on our interpretation of the relevant statutory provisions and regulations, we conclude that the respondent's divorce from the fiancée petitioner does not render him ineligible for adjustment of status under sections 245(a) and (d) of the Act. Accordingly, we will sustain the respondent's appeal and remand the record to give him an opportunity to renew his application for adjustment of status before the Immigration Judge.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.