**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 18-2496**

───────────

SOTHON SONG,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

───────────

**No. 21-1852**

───────────

SOTHON SONG,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Argued:  September 13, 2022          Decided:  December 1, 2022

───────────

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

───────────

Petition denied by published opinion.  Judge Diaz wrote the opinion, in which Judge Thacker joined.  Judge Quattlebaum wrote a concurring opinion.

———————————

**ARGUED:**  Eli A. Echols, SOCHEAT CHEA, P.C., Duluth, Georgia, for Petitioner. Neelam Ihsanullah, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian M. Boynton, Acting Assistant Attorney General, Anthony C. Payne, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————————

DIAZ, Circuit Judge:

Sothon Song petitions for review of the Board of Immigration Appeals' final removal order under 8 U.S.C. § 1252. The Board held that Song, as the recipient of a K-1 nonimmigrant visa, couldn't adjust status to that of a conditional permanent resident without an affidavit of support from her former husband, who originally petitioned for her K-1 visa. Finding the Board's decision to be reasonable under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we deny Song's petition.

I.

A.

Song was a citizen and resident of Cambodia when her fiancé, U.S. citizen Justin Sang, petitioned for Song to receive a K-1 visa so that she could enter the United States and marry him. Song received the visa, traveled to the United States, and married Sang.

Song then applied to adjust status to become a conditional permanent resident under 8 U.S.C. § 1255(d).[1] Sang, in turn, submitted Form I-864, an affidavit of support for Song's adjustment application.[2] But the marriage fizzled and Sang withdrew his affidavit of support while Song's adjustment application was pending.

---

[1] We described the way a K-1 visa beneficiary can adjust her status to become a conditional permanent resident in *Regis v. Holder*, 769 F.3d 878, 879–80 (4th Cir. 2014).

[2] I-864 sponsorship is a contractual obligation to provide support to maintain the applicant (here, Song) at an annual income of at least 125% of the federal poverty line. *See* 8 U.S.C. § 1183a(a)(1)(A). This obligation survives divorce and terminates only when the applicant naturalizes, works for about ten years, abandons her permanent-resident status and leaves the country, or dies. 8 C.F.R. § 213a.2(e).

United States Citizenship and Immigration Services ("USCIS") denied Song's application, finding that she was inadmissible under 8 U.S.C. § 1182(a)(4) as a noncitizen likely to become a public charge, and the Department of Homeland Security began removal proceedings. In the meantime, Song and Sang divorced.

In her removal proceedings, Song filed a second application for adjustment and presented a new affidavit of support, this time from a friend who attested that he would ensure Song's financial stability. But the immigration judge denied that application, holding that Song could adjust status only if Sang provided an affidavit of support. The immigration judge held that absent Sang's Form I-864, which he had withdrawn, Song couldn't show she was unlikely to become a public charge, and she was therefore inadmissible under 8 U.S.C. § 1182(a)(4). The immigration judge ordered Song's removal to Cambodia.

### B.

Song appealed to the Board of Immigration Appeals. A three-member panel dismissed the appeal. In its published (and precedential) decision,[3] the Board discussed the text and purpose of the relevant statutes and regulations, Board precedent, and Song's arguments. The Board noted that Sang withdrew his affidavit of support under 8 C.F.R. § 213a.2(f), and, like the immigration judge, held that this withdrawal foreclosed Song from establishing her admissibility.

---

[3] The Board's opinion is reported as *Matter of Song*, 27 I. & N. Dec. 488 (BIA 2018).

4

The Board rejected Song's argument that requiring the original petitioner's affidavit of support would make status adjustment virtually unavailable to divorced K-1 beneficiaries. The Board explained that a sponsor could agree to leave his affidavit of support in place while the K-1 beneficiary's adjustment application is pending, even as the sponsor and applicant divorce. Similarly, a divorcing applicant could agree, as a negotiated term in divorce proceedings, not to sue the sponsor for breach of his contractual I-864 obligations, which survive divorce. A.R. 61 (citing Affidavits of Support on Behalf of Immigrants, 71 Fed. Reg. 35,740 (June 21, 2006)). So, the Board concluded, requiring the original petitioner's sponsorship doesn't automatically shut the door on divorcing K-1 beneficiaries like Song who seek to adjust status.

The Board held that there are only two statutory exceptions to the requirement that the affidavit in support come from the K-1 beneficiary's petitioner: abuse and death. And neither applied in Song's case.

This petition followed.

II.

While we review the Board's legal determinations de novo, "we generally give *Chevron* deference to the [Board's] statutory interpretations, recognizing that Congress conferred on the [Board] decisionmaking power to decide such questions of law." *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014). The Board's decision is entitled to *Chevron* deference here because a three-member panel decided Song's case in a precedential opinion, which carries the force of law. *See Amaya v. Rosen*, 986 F.3d 424,

5

430 (4th Cir. 2021). And in general, deference to the Executive is warranted "on matters of immigration, which involve sensitive political functions that implicate questions of foreign relations." *Id.* (cleaned up).[4]

Song doesn't challenge the reasonableness of the agency's regulations. But she does challenge the Board's application of the regulations in her case. We hold that the Board's decision was reasonable, and not arbitrary, capricious, or manifestly contrary to the statute.

### A.

*Chevron* instructs us to look first to the applicable statute to see if it's "silent or ambiguous with respect to the specific issue," so we begin there. *Regis*, 769 F.3d at 881 (cleaned up).

The Immigration and Nationality Act (the "INA") is silent on the pertinent issues: whether Sang could withdraw his affidavit of support, and if so, whether that withdrawal foreclosed Song from adjusting status on public-charge grounds. The statutory scheme doesn't expressly provide for public-charge determinations for nonimmigrant-visa beneficiaries like Song. Nor does it speak to whether sponsors like Sang may withdraw an affidavit of support (or to the effect of any such withdrawal).

### 1.

---

[4] In his concurring opinion, Judge Quattlebaum suggests that if any deference is warranted, it's under *Auer v. Robbins*, 519 U.S. 452 (1997), and not *Chevron*. But as we explain below, the Board acted in an area where the statutes are silent, and therefore ambiguous (even though regulations fill the gaps). And the Board decided *Song*'s case in a three-member decision that carries the force of law. For these reasons, we find *Chevron* to be the appropriate framework here.

8 U.S.C. § 1255 governs adjustment of status for nonimmigrants, including Song and other K-1 beneficiaries. That section sets certain eligibility requirements for status adjustment, including that the noncitizen must be "admissible to the United States." *Id.* § 1255(a), (d). In turn, 8 U.S.C. § 1182(a) governs admissibility, and provides:

> **(a) Classes of aliens ineligible for visas or admission**
> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
> . . .
> > **(4) Public charge**
> > . . .
> > > **(C) Family-sponsored immigrants**
> > > Any alien who seeks admission or adjustment of status under a visa number issued under section 1151(b)(2) or 1153(a) of this title is inadmissible under this paragraph unless—
> > > . . .
> > > > **(ii)** the person petitioning for the alien's admission . . . has executed an affidavit of support described in section 1183a of this title with respect to such alien.

As the text shows, subsection (a)(4)(C) purports to apply to status adjustments only for noncitizens who received "a visa number issued under section 1151(b)(2) or 1153(a)." *Id.* § 1182(a)(4)(C). Neither applies to Song.

Section 1151(b)(2) applies to "immediate relatives" (including "spouses"), and section 1153(a) applies to other familial-preference categories not relevant here. While Song became a "spouse" of a U.S. citizen, she didn't receive "a visa number" as a spouse; she received a K-1 (fiancée nonimmigrant) visa under 8 U.S.C. §§ 1101(a)(15)(K)(i) and 1184(d).

Faced with a statutory gap, the agency filled it with a regulation to clarify that K-1 beneficiaries like Song must obtain an affidavit of support from the person who filed the

7

K-1 petition. By that regulation, "an intending immigrant is inadmissible as an alien likely to become a public charge, unless the qualified sponsor specified in paragraph (b) . . . has executed on behalf of the intending immigrant an affidavit of support."  8 C.F.R. § 213a.2(a)(1)(i)(A).  In "paragraph (b)," the regulation further provides that for K-1 beneficiaries, the "person who filed a . . . fiancé(e) petition, the approval of which forms the basis of the intending immigrant's eligibility to apply for . . . adjustment of status as an immediate relative or a family-based immigrant, must execute an affidavit of support on behalf of the intending immigrant." *Id.* § 213a.2(b)(1).  The regulation confirms that this provision applies to "any alien admitted as a K nonimmigrant when the alien seeks adjustment of status." *Id.* § 213a.2(a)(2)(i)(A).

In short, the statute doesn't expressly speak to the issue.  But under the regulation, Song couldn't adjust her status without an affidavit of support from Sang, the person who filed her K-1 petition.

## 2.

The statute is also silent on the issue of withdrawing an affidavit of support.  8 U.S.C. § 1183a (defining requirements for the sponsor's affidavit of support) doesn't mention withdrawal, nor does 8 U.S.C. § 1182(a) (listing grounds for inadmissibility) lay out the effect of withdrawal.

Again, the agency's regulation fills the gap:

> In an adjustment of status case, once the sponsor . . . has presented a signed affidavit of support . . . the sponsor . . . may disavow his or her agreement to act as sponsor . . . only if he or she does so in writing and submits the document to the immigration officer or immigration judge before the decision on the adjustment application.

8 C.F.R. § 213a.2(f)(2). In other words, sponsors can withdraw sponsorship, as long as they do so in writing and while the adjustment application is pending.

At bottom, "the INA's silence on the issue[s] creates an ambiguity. There is no plain language in the statute that resolves the question[s] at issue here." *Regis*, 769 F.3d at 883. Rather, the agency filled the statutory gaps with regulations. *See Matter of Sesay*, 25 I. & N. Dec. 431, 434–35 (BIA 2011) (discussing gaps relating to fiancé(e) visas left in the INA by the Immigration Marriage Fraud Amendments Act of 1986). And the Board properly considered Song's case against this statutory and regulatory backdrop.

## B.

Turning to *Chevron*'s second step, we hold that the Board's decision is reasonable because it's neither "manifestly contrary to the statute" nor "arbitrary or capricious in substance." *Amaya*, 986 F.3d at 432 (cleaned up). To the contrary, the decision is well reasoned, as it "embraces the existing statutory and regulatory framework and reaches a result consistent with that framework," and offers "several reasons" supporting its conclusion. *Regis*, 769 F.3d at 883–84.

The Board's reading of the regulations fits the statutory scheme. While Song contends it's unfair for the petitioning sponsor to have unilateral "veto power" over the K-1 beneficiary's adjustment application, dependence on the K-1 petitioner permeates nearly every step of the K-1 process established by Congress.

For instance, a noncitizen fiancée can't begin the K-1 process herself; it's the U.S. citizen who must first petition for the fiancée's admission. 8 U.S.C. § 1184(d)(1). And a K-1 beneficiary must leave the country unless she marries the U.S.-citizen petitioner within

9

three months of entry. *Id.* Even after the marriage, a K-1 beneficiary is at first entitled to adjust only to *conditional* permanent-resident status, which can be revoked upon a finding that the marriage ended or was a sham. *Id.* §§ 1255(d), 1186a(b).

So the Board's conclusion that a sponsor's withdrawal forecloses a K-1 beneficiary's adjustment application tracks other statutory features of the K-1 beneficiary's unique position. And even if this apparent power imbalance might seem unfair to noncitizens in Song's position as a policy matter, we're constrained by the statutes as Congress enacted them. *See Patel v. Garland*, 142 S. Ct. 1614, 1626–27 (2022).

*Matter of Sesay* doesn't compel a different result. In *Sesay*, the Board held that divorce doesn't automatically foreclose a K-1 beneficiary's adjustment of status, but the applicant still must meet the other requirements, including admissibility under 8 U.S.C. § 1182(a). 25 I. & N. Dec. at 440.

On the way to this conclusion, the Board noted that the literal terms of the status-adjustment statute, which require "immigrant visa eligibility and availability," would technically make status adjustment unavailable to K-1 beneficiaries, who receive *non*immigrant visas. *Id.* at 434. But applying the statute's literal terms would lead to the "absurd result of disqualifying all fiancé(e) visa holders from statutory eligibility," which would "clearly be at odds with the entire basis for fiancé(e) visa status and current administrative practice." *Id.* With no "clarifying statutory amendments or rulemaking" that could resolve the ambiguity, *id.* at 434 n.4, the Board adopted a functional reading that would "allow fiancé(e)s to continue to adjust status, even though they cannot satisfy the

10

literal terms of sections 245(a)(2) and (3), which require immigrant visa eligibility and availability," *id.* at 438.

Song reads *Sesay* as granting her some leeway around strict application of the regulatory requirement that Sang, as her petitioner, must be her sponsor. In other words, as Song's argument goes, *Sesay* recognized that sometimes we must bend the rules so that the K-1 process can function. So too here, she argues: if we don't allow Song to meet public-charge requirements by enlisting a co-sponsor aside from Sang, then status adjustment will be nearly unavailable for people in Song's situation.

But *Sesay* doesn't support, much less compel, Song's position. To the contrary, *Sesay* confirms that K-1 beneficiaries still must satisfy public-charge requirements and other criteria for admissibility. And 8 C.F.R. § 213a.2 makes clear that K-1 beneficiaries can't satisfy those requirements absent an affidavit of support from the petitioner. *Sesay* involved an ambiguous statute and the lack of applicable clarifying regulations, while here, the regulations apply on their face to Song's situation. Nor is Song's proposal necessary for the K-1 process to function.

At bottom, "[f]ar from being arbitrary, capricious, or manifestly contrary to the statute," we find the Board's decision to be well reasoned. *Regis*, 769 F.3d at 884. So it passes muster under *Chevron*.

## C.

### 1.

11

Finally, we reject Song's argument that the Board should have applied a different regulatory provision to prevent Sang from withdrawing his affidavit of support.

Song argues that the Board should have found that Sang couldn't withdraw his affidavit of support, because when considering K-1 beneficiaries, 8 C.F.R. § 213a.2(f)(1) should apply and not subsection (f)(2). Subsection (f)(1) provides:

> In an immigrant visa case, once the sponsor . . . has presented a signed affidavit of support . . . the sponsor . . . may disavow his or her agreement to act as sponsor . . . if he or she does so in writing and submits the document to the Department of State officer before the actual issuance of an immigrant visa to the intending immigrant. Once the intending immigrant has obtained an immigrant visa, a sponsor . . . cannot disavow his or her agreement to act as a sponsor . . . unless the person or entity who filed the visa petition withdraws the visa petition in writing.

8 C.F.R. § 213a.2(f)(1). So in the *immigrant*-visa context, a sponsor generally can't withdraw an affidavit of support once the visa issues. *Id.*

In contrast, as we noted above, subsection (f)(2) applies to "adjustment of status case[s]" and allows the sponsor to withdraw an affidavit of support, even after the visa issues, as long as it's before the adjustment application is decided. *Id.* § 213a.2(f)(2).

Song recognizes that subsection (f)(1) addresses immigrant visas and not K-1 nonimmigrant visas. Still, she argues that it was arbitrary and capricious for the Board not to apply subsection (f)(1), because it would better protect a K-1 beneficiary's reliance interests. We cannot agree.

The Board didn't act arbitrarily or capriciously by hewing to a regulatory provision that applies on its face, even if another (facially inapplicable) provision might have better protected Song's reliance interests. Indeed, the Board's application of subsection (f)(2)

12

aligns with the statutes laying out other aspects of the K-1 process that depend, nearly at every turn, on the petitioner.

2.

Song's petition also seeks review of the Board's refusal to reopen her removal proceedings so she could introduce a document entitled "Questions and Answers: USCIS— American Immigration Lawyers Association (AILA) Meeting," dated October 9, 2012. Song suggested that this document supported her argument that subsection (f)(1) (and not (f)(2)) should apply to K-1 beneficiaries' adjustment applications, such that a petitioner couldn't withdraw a Form I-864 once the K-1 beneficiary has entered the United States. But at oral argument, Song disclaimed that position. That concession is well taken, as we see nothing unreasonable about the Board's determination that the October 2012 document was available to Song while her removal proceedings were still pending in November 2018. *See* 8 C.F.R. § 1003.2(c)(1) (providing that reopening is unavailable unless the newly proffered evidence "was not available and could not have been discovered or presented at the former hearing").

In any event, the document doesn't render the Board's decision unreasonable. At oral argument, both parties agreed that the document is ambiguous as to whether it truly reflected USCIS's position in 2012. But even if it did, the Board's later precedential decision in Song's case binds USCIS employees. *See* 8 C.F.R. § 1003.1(g). In other words, the Board's decision trumps the document.

*PETITION DENIED*

13

QUATTLEBAUM, Circuit Judge, concurring in the judgment:

I concur in the denial of Sothon Song's petition. But I would get there a different way. In my view, this is not a *Chevron* case. As the majority correctly notes, "Song doesn't challenge the reasonableness of the agency's regulations. But she does challenge the Board's application of the regulations in her case." Maj. Op. at 6. If any deference is involved, an agency's interpretation of its regulations implicates *Auer* deference. *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (holding that "[t]he BIA's interpretation of its own governing regulations is 'controlling unless plainly erroneous or inconsistent with the regulation.'").

But we do not afford *Auer* deference when the regulations are clear and unambiguous. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("First and foremost, a court should not afford *Auer* deference unless the regulation is truly ambiguous."). And as the Board found, "the language of both the statute and regulations is plain and unambiguous." A.R. 56. The majority agrees. *See* Maj. Op. at 11 ("*Sesay* involved an ambiguous statute and the lack of applicable clarifying regulations, while here, the regulations apply on their face to Song's situation."). Thus, I would simply conduct a de novo review of the question of law presented by the plain text of the applicable statutes and regulations. Doing so leads us to the same place—Song's petition should be denied.

14