# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YELENA IZOTOVA CHOIN,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney
General,

Respondent.

No. 06-75823

Agency No.
A75-597-079

YELENA IZOTOVA CHOIN,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney
General,

Respondent.

No. 07-70941

Agency No.
A75-597-079

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 11, 2008—Pasadena, California

Filed August 12, 2008

Before: Alfred T. Goodwin, Harry Pregerson, and
Dorothy W. Nelson, Circuit Judges.

Opinion by Judge Pregerson

10463

## COUNSEL

Donald Ungar, San Francisco, California, for the petitioner.

Anthony P. Nicastro, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Yelena Choin ("Choin"), a native and citizen of Russia, petitions this court for review of a decision by the Board of

Immigration Appeals ("BIA") that denied her application for adjustment of status and ordered her removed. We have jurisdiction under 8 U.S.C. § 1252. We grant Choin's petition and remand to the BIA for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. On December 4, 1998, Choin arrived in the United States with her two children on a K visa as the fiancée of U.S. citizen Albert Tapia.[1] Choin and Tapia were married on February 20, 1999. On April 14, 1999, Choin filed an application to adjust her status to that of a lawful permanent resident. On April 9, 2001, five days short of two years from the date Choin filed her application, and while she was still waiting to have an interview with the Immigration and Naturalization Service ("INS")[2] on her application, Choin and Tapia were divorced.

On August 27, 2001, the INS denied Choin's application for adjustment of status because of her divorce. The Department of Homeland Security subsequently began removal proceedings against Choin. After a brief hearing, an immigration judge ordered Choin removed. Choin appealed to the BIA, which dismissed her appeal. Choin filed a motion for reconsideration, which the BIA also denied. Choin now petitions

---

[1]As explained in more detail below, the K visa is a nonimmigrant visa that allows fiancées of United States citizens to enter the United States to get married here.

[2]On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the newly formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. § 101, *et seq.*). This opinion refers to the INS during proceedings that took place before this change occurred.

for review of both the original BIA decision and the denial of her motion for reconsideration.[3]

## II.  DISCUSSION

The government contends that a K visaholder is ineligible to adjust her status to that of a lawful permanent resident if her marriage ends before the agency adjudicates her application for adjustment of status. To become a lawful permanent resident, the fiancée of a U.S. citizen must go through four steps.

First, the non-citizen must obtain a K visa through a visa petition filed by her U.S. citizen fiancé. 8 U.S.C. § 1184(d). To obtain the visa, the couple must have met in person within two years of the filing of the petition and must have a bona fide intention to marry within ninety days of the non-citizen's arrival. 8 U.S.C. § 1184(d)(1).

The second step towards permanent residency is marriage to the U.S. citizen. Once the K visa is approved, the non-citizen can legally enter the United States to get married. *Id.* If the couple does not marry within ninety days of the non-citizen's entry, the non-citizen is required to depart from the United States. *Id.*

**[1]** If the couple is married within ninety days, the non-citizen spouse can take the third step and apply to adjust her status to that of a lawful permanent resident. 8 C.F.R. § 245.2(c). Before 1986, this application for adjustment of status was automatic. *See Matter of Dixon*, 16 I. & N. Dec. 355, 357 (BIA 1977). In 1986, however, in response to certain marriage fraud concerns, Congress enacted the Immigration

---

[3]Because we grant Choin's petition for review of the original BIA decision (Ninth Circuit case number 06-75823), we dismiss as moot her petition for review of the BIA's denial of her motion for reconsideration (Ninth Circuit case number 07-70991).

Marriage Fraud Amendments ("IMFA"). Pub. L. No. 99-639. The IMFA deleted the language that made adjustment of status for K visaholders automatic, and therefore required K visaholders, like other nonimmigrants, to adjust their status through the Immigration and Nationality Act ("INA") § 245. *See* 8 U.S.C. § 1255. Congress also added INA § 245(d), which provided that K visaholders could adjust to permanent resident status only "as a result of the marriage of the nonimmigrant . . . to the citizen who filed [the K visa petition]." 8 U.S.C. § 1255(d). This means that an immigrant entering the country on a K visa cannot adjust her status to that of a permanent resident based on a marriage to a person other than her original fiancé, or on any other basis.

The IMFA also added a new fourth step to the process. Now, K visaholders can first adjust only to *conditional* permanent resident status. 8 U.S.C. § 1255(d). Section 216 of the INA now provides that, for the first two years of permanent resident status, spouses of U.S. citizens are only conditional permanent residents. Upon the two-year anniversary of gaining conditional permanent resident status, the couple can jointly petition to have the non-citizen's conditional tag removed. 8 U.S.C. § 1186a(c)(1)(A). In the joint petition, the couple must affirm that they are still married and that they did not enter into marriage for immigration purposes. 8 U.S.C. § 1186a(d)(1). They must also provide information about their place of residence and their employment history over the previous two years. *Id.* If the non-citizen is unable to file the joint petition because her marriage has ended, she may apply for a waiver of the petition requirement by attesting that her marriage was entered into in good faith. 8 U.S.C. § 1186(c)(4)(B).

*Choin's Eligibility*

Choin complied with the statutory framework described above. Based on a petition from her fiancé, Choin successfully obtained a K visa. She entered the United States and married her fiancé within ninety days of her arrival. She filed

the form to adjust her status to conditional permanent resident. The INS, however, did nothing about her application for almost two and a half years, and thus she never became a conditional permanent resident and never reached the fourth stage of the process. At issue is whether Choin's divorce after over two years of marriage made her ineligible to adjust to conditional permanent resident.

Both the Immigration Judge ("IJ") and the BIA found Choin ineligible for adjustment of status under INA § 245(d) because of her divorce. Section 245(d) provides as follows:

> The Attorney General may not adjust . . . the status of a [K visaholder] except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title *as a result of the marriage of the nonimmigrant* . . . to the citizen who filed the [K visa petition].

8 U.S.C. § 1255(d) (emphasis added).

**[2]** This case thus turns on whether the IJ and BIA properly interpreted the "as a result of the marriage of the nonimmigrant" language in INA § 245(d). If "Congress has directly spoken to the precise question at issue," then the plain meaning of the statute controls. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Both parties contend that the plain meaning of the statute supports their interpretation. We disagree, and conclude that the plain language of § 245 is ambiguous. Nothing in the text of the statute definitively resolves the eligibility of a petitioner in Choin's circumstances.[4] The language of INA § 245 specifying that a

---

[4]There is no question that the plain language of the statute bars K visaholders from adjusting to permanent resident status on any basis other than the marriage to the citizen who petitioned on their behalf. *See Kalal v. Gonzales*, 402 F.3d 948, 951 (9th Cir. 2005) (rejecting attempt of K visaholder to adjust his status based on marriage to a woman other than

nonimmigrant may adjust status "as a result of the marriage" can plausibly be interpreted in two ways. As the government argues, it could be interpreted to exclude those petitioners whose marriages no longer exist on the date of adjudication. On the other hand, as Choin argues, it could also be interpreted to mean that the application must be based on the fact of the marriage.

The government contends that if the statute is ambiguous, we must defer to the agency's interpretation under *Chevron*. We disagree. When the BIA advances its interpretation of an ambiguous statute in an unpublished decision, that interpretation is not entitled to *Chevron* deference. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006). Unpublished BIA decisions are instead given *Skidmore* deference, entitling the interpretation "to a respect proportional to its power to persuade." *Garcia-Quintero*, 455 F.3d at 1014; (applying the deference scheme laid out in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). Under *Skidmore*, our deference to the agency position is proportionate to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. The BIA decision here does not evidence significant consideration or thoroughness. The relevant analysis consists of two paragraphs that offer little explanation for why the BIA reached its conclusion. Our deference to the BIA here is therefore based only on the inherent strength of the agency's interpretation.

**[3]** In weighing the strength of the parties' competing interpretations, we consider the meaning of § 245 in light of the

the one who filed the K visa petition for him); *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007) (rejecting attempt of K visaholder to adjust his status based on a petition submitted by a potential employer). Choin, however, unlike the petitioners in *Kalal* and *Markovski*, is petitioning on the basis of the marriage to the citizen who petitioned on her behalf.

purpose of the statute and its context in the statutory scheme. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). We conclude that the purpose and context of § 245(d) do not support the government's interpretation.

**[4]** The purpose of the IMFA was "to deter immigration-related marriage fraud and other immigration fraud." Pub. L. No. 99-639. These amendments were necessary because, prior to enactment of the IMFA, even a sham marriage to a United States citizen provided a ready and immediate path to lawful permanent resident status. *See* Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, Immigration Law and Procedure § 42.01 (2007). Congress therefore limited the path to permanent residency by providing that K visaholders can only adjust to permanent resident status based on marriage to the fiancé who petitioned for them, not based on a marriage to someone else or any other basis. Congress also created the conditional permanent resident status to enable the government to gather two years of evidence about a marriage before granting full permanent resident status. This purpose of rooting out marriage fraud does not support the government's reading of the statute as a tool to remove immigrants like Choin who marry a U.S. citizen in good faith but have their marriages end in divorce.

**[5]** The context of § 245(d) in the larger statutory scheme also supports Choin's interpretation. As discussed above, the INA provides that K visaholders become only conditional permanent residents for the first two years of permanent resident status. 8 U.S.C. § 1186a(a)(1). At the end of the two-year period, the non-citizen and her spouse must file a joint petition and appear for an interview to verify that their marriage is not fraudulent. 8 U.S.C. § 1186a(c)(1)(A). If, however, the marriage has ended before the joint petition can be filed, the

non-citizen can apply for a waiver of the petition requirement by showing that her marriage was entered into in "good faith" and that the immigrant "was not at fault in failing" to file the joint petition. 8 U.S.C. § 1186a(c)(4)(B). This waiver teaches that a non-citizen spouse is not automatically returned to his or her native country upon divorce. Instead, the statute focuses on the good faith of the marriage, not the marriage's success or failure.

[6] The government, however, reads the statute as imposing a durational requirement on Choin's marriage. In the government's view, to receive conditional permanent resident status, an immigrant here on a K visa must stay married until the government gets around to adjudicating her application for adjustment of status. While Congress could impose a durational requirement, we decline to adopt a reading of § 245(d) that imposes such a requirement based only on the ambiguous language in the statute.

Our decision in *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006), addressed an analogous situation. In *Freeman,* an immigrant woman filed an adjustment of status application based on marriage to a U.S. citizen. *Id.* at 1033. The agency took more than two and a half years to review her application, and, in the meantime, her husband died. *Id.* Interpreting a different provision of the INA, 8 U.S.C. § 1151(b)(2)(A)(i), we concluded that nothing in the statute indicated that a petition that was valid at the time it was submitted was "entirely voided upon the [husband's] death." *Id.* at 1040. We noted that "[i]t is understandable that the immigration authorities may require a considerable amount of time to process the many applications that come before them; however, an alien's status as a qualified spouse should not turn on whether DHS happens to reach a pending application before the citizen spouse happens to die." *Id.* at 1043.

[7] As in *Freeman*, we here similarly find nothing in the plain language of § 245(d) suggesting that an application that

was valid when submitted should be automatically invalid when the petitioner's marriage ends by divorce two years later.[5] The purpose and context of § 245(d) also do not support the government's reading of the statute that requires the automatic removal of immigrants whose marriages end in divorce while their application for adjustment of status languishes in the agency's file cabinet.

We therefore conclude that the BIA's reading of INA § 245(d) was incorrect, and we GRANT Choin's petition for review and remand to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED.**

---

[5]As in *Freeman*, however, we note that even if Choin married in good faith, our decision does not "automatically entitle [Choin] to adjustment of status," which is granted at the discretion of the Attorney General. *Id.* at 1040 n.12. Instead, "the purpose of our opinion here is to ensure that in making the decision to accord [adjustment of] status, the immigration authorities are properly construing the law that they have the discretion to apply." *Id.*