Nataliya STROKOUS, Petitioner,

v.

Michael MUKASEY, Respondent.

No. 06–72941.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 21, 2008.

Filed Jan. 8, 2009.

Stuart Irwin Folinsky, Law Office of Sutart I. Folinsky, Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esquire, Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Colette Jabes Winston, Esquire, Ernesto H. Molina, Jr., Esquire, U.S. Department of Justice, Washington, DC, for Respondent.

Before: GRABER and CLIFTON, Circuit Judges, and TRAGER,* District Judge.

### MEMORANDUM **

Nataliya Strokous petitions for review of a Board of Immigration Appeals' ("BIA") decision dismissing her appeal of an immigration judge's decision that rejected her claim for adjustment of status based on marriage to a United States citizen ("USC").[1] Given the parties' familiarity with the facts, they are only briefly summarized here. Strokous is a Ukrainain citizen who arrived in the United States on a K–1 fiancee visa in order to marry Boris Begel ("Begel"), a USC whom she later divorced. She filled out an application for adjustment to lawful permanent resident ("LPR") status before divorcing Begel but did not file the application until after the divorce.[2] The then-Immigration and Naturalization Service ("INS") rejected her petition for adjustment of status, and an immigration judge found her deportable.

In her appeal before the BIA, Strokous argued that she is entitled to adjust to LPR status based on her marriage to Begel despite the fact that the marriage ended before she filed her application for adjustment of status. Central to this claim is the text of section 245(d) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1255(d). Under INA § 245(d), "[t]he Attorney General may not adjust, under subsection (a) of this section, the status of a [K visa recipient] except to that of an alien lawfully admitted ... on a conditional basis ... *as a result of* the marriage of the nonimmigrant ... to the citizen who filed the petition [for the K visa]." 8 U.S.C. § 1255(d) (emphasis added). The BIA dismissed Strokous's appeal in an opinion that was not written with particular precision but may have rested on the theory that, for an alien to be adjusting "as a result of" a marriage under INA § 245(d), the marriage must still be in existence when the petition for adjust-

---

\* The Honorable David G. Trager, District Court Judge, of New York, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Strokous's son, Vitaliy, was originally a petitioner in this case. He has, however, re-ceived lawful permanent residence status and is no longer a petitioner.

2. Strokous later married another USC, Alexander Medvedev. She acknowledges that her marriage to Medvedev does not entitle her to any immigration benefit. *See* INA § 245(d), 8 U.S.C. § 1255(d).

ment is adjudicated.[3] Following the dismissal of her appeal before the BIA, Strokous filed this timely petition for review.

Most aliens applying for adjustment of status do so utilizing the mechanism provided by INA § 245, 8 U.S.C. § 1255. INA § 245 sets forth the general procedures for adjustment of status, but eligibility for adjustment is usually determined by other provisions of law. In her initial briefs, however, Strokous does not argue that she is eligible for adjustment using the mechanism provided by INA § 245. Instead, she urges that a fiancee visaholder may adjust based on other provisions of the INA. This claim is squarely contradicted by our recent decision in *Choin v. Mukasey*, 537 F.3d 1116 (9th Cir.2008), which was decided after the initial briefs were filed in this case. *Choin* held that the Immigration Marriage Fraud Amendments of 1986 ("IMFA"), Pub.L. No. 99–639, 100 Stat. 3537 (1986), "required K visaholders, like other nonimmigrants, to adjust their status through [INA] § 245." *Id.* at 1118.

Strokous argues in a supplemental brief that *Choin* undermines the reasoing of the BIA's decision and requires remand. We agree. In *Choin*, we considered the case of a petitioner who married the USC who petitioned for her fiancee visa, filed her application for adjustment and then divorced after filing the application but before the application was adjudicated. *Id.* at 1117–18. We held that INA § 245(d)'s requirement that Choin adjust "as a result of" her marriage did not bar her from adjusting status. *See id.* at 1120–21. We noted that INA § 245(d) was created by the IMFA. *See id.* Among other things, we reasoned that the purpose of the IMFA was to deter marriage fraud, not to impose a durational requirement on a marriage. *Id.* We held that the IMFA's "purpose of rooting out marriage fraud does not support the government's reading of the statute as a tool to remove immigrants like Choin who marry a U.S. citizen in good faith but have their marriages end in divorce." *Id.* at 1120. Accordingly, we held that *Choin* was not barred from adjusting by INA § 245(d) even though her marriage had ended. *Id.* at 1120–21.

Strokous differs from *Choin* in one significant respect: Strokous filed her application for adjustment of status after she divorced her USC husband rather than *before* divorcing the USC, as Choin did. Though the government argues that Strokous's case is distinguishable from *Choin* on this ground, this case must be remanded to the BIA. As noted above, the BIA's decision may have rested on the rationale that INA § 245(d) requires that a petitioner's marriage be in existence when her petition for adjustment is adjudicated. If this was the BIA's rationale, it was squarely contradicted by *Choin*.[4] How *Choin* applies to Strokous's case is a matter for the BIA to decide in the first instance. *See Gonzales v. Thomas*, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam); *INS v. Orlando Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

**PETITION FOR REVIEW GRANTED; REMANDED.**

---

3. The BIA was not explicit about its rationale but may have incorporated by reference a decision by the then–INS that relied on this theory.

4. Where a BIA decision is unclear but may have rested on an invalid ground, remand is necessary. *See Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1454–55 (9th Cir.1985).