# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUIS JAVIER ROSAS-CASTANEDA,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General
                    *Respondent,*

No. 10-70087

Agency No.
A44-113-142

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 9, 2010—San Francisco, California

Filed January 4, 2011
Amended September 12, 2011

Before: Robert E. Cowen,* A. Wallace Tashima, and
Barry G. Silverman, Circuit Judges.

Order;
Dissent to Order by Chief Judge Kozinski;
Opinion by Judge Silverman

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

17259

## COUNSEL

John M. DeStefano, III (argued), Snell & Wilmer, L.L.P, Phoenix, Arizona, for the petitioner.

Tony West, Assistant Attorney General; Linda S. Wernery, Assistant Director; James E. Grimes (argued), Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.

# ORDER

The opinion filed on January 4, 2011, and published at 630 F.3d 881 (9th Cir. 2011) is amended as follows:

> At slip opinion page 272, lines 15-16, replace <. . . and we remand to the BIA for proceedings consistent with this opinion.> with <. . . and we remand to the BIA for further proceedings consistent with this opinion to permit the government to put forth reliable evidence to show that the petitioner was convicted of an aggravated felony.>

With the opinion as amended, the panel has voted to deny the petition for rehearing. Judge Silverman has voted to deny the petition for rehearing en banc, and Judges Cowen and Tashima have so recommended. The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35. The petition for rehearing en banc is denied.

No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

---

KOZINSKI, Chief Judge, with whom Judge O'SCANNLAIN joins, dissenting from the order denying the petition for rehearing en banc:

The panel frames its opinion modestly as addressing whether *Sandoval-Lua* v. *Gonzales*, 499 F.3d 1121 (9th Cir. 2007), survives the enactment of the REAL ID Act. But, the panel goes much further. It creates a sweeping rule prohibit-

ing IJs from fulfilling their fundamental duty to develop the record in immigration cases. This is contrary to the BIA's reasonable construction of the statute, a construction the panel does not pause to examine because it divines the "unambiguous intent" of Congress from statutory silence. The panel thereby creates an end run around *Chevron U.S.A. Inc.* v. *NRDC, Inc.*, 467 U.S. 837 (1984), rendering it pretty much a dead letter whenever a panel of our court chooses to ignore an agency's interpretation of the statute it administers.

# I

The REAL ID Act authorizes IJs to ask aliens to provide corroboration of their credible testimony. 8 U.S.C. § 1229a(c)(4)(B). The panel interprets this provision as abrogating the IJ's authority to request corroboration of anything else. *See Rosas-Castaneda* v. *Holder*, 630 F.3d 881, 887 (9th Cir. 2011). The panel claims that this is the unambiguous meaning of the statute even though it says nothing of the sort. I suppose it's possible to infer that Congress meant to cut back on the power of IJs, even though it didn't say it; the *expressio unius* rule of construction would permit this inference, although it would be a very strange interpretation, in my view. But the panel holds that this inference is not merely permitted, but *required*, as if Congress had said, "the IJ may not request corroboration of documentary records." But there's a world of difference between a clear statutory command and an inference based on a rule of construction. By eliminating this distinction and turning a rule of thumb into a statutory command, the panel fundamentally changes the balance of authority between federal courts and the administrative agencies they review.

The panel's fundamental error is confusing plain statutory language with rules of construction. If the statutory language is clear, we need not resort to rules of construction; conversely, if rules of construction are needed, there must be some ambiguity. But if a statute administered by an agency is

ambiguous, the appropriate rule of construction is *Chevron* and its progeny. Under *Chevron*, we defer to an agency's reasonable interpretation whenever the statute in question is "silent or ambiguous." *Chevron*, 467 U.S. at 843. The statute here is silent as to an IJ's authority to request corroboration of documentary evidence. This falls squarely within the language of *Chevron* as an instance where we must defer to the agency, leaving no room to apply the *expressio unius* rule of construction.

The panel derails the *Chevron* train by enlisting *expressio unius* to find plain meaning in the spaces between the statutory words. But a negative pregnant can't stand in for a literal reading of the text, and applying the panel's rule leads to absurd results. Take a sentence in the same section, just before the one at issue:

> In evaluating the *testimony* of the applicant or other witness *in support* of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof.

8 U.S.C. § 1229a(c)(4)(B) (emphasis added). The sentence explains what the IJ is to do when evaluating the testimony of witnesses supporting the application but is silent as to documentary evidence. By the panel's rationale, an IJ has to accept at face value all documents proffered by the alien. Nor does the statute say anything about witnesses opposing the application, so presumably the IJ must always take them as telling the gospel truth.

Or look at the very sentence the panel interprets here:

> Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise *credible* testimony, such evidence

must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

8 U.S.C. § 1229a(c)(4)(B) (emphasis added). The statute speaks to credible testimony, but says bupkis about *non-*credible testimony. Obeying the sounds of silence, as the panel says we must, an IJ is prohibited from requesting corroboration of non-credible testimony. This makes no sense at all. Treating *expressio unius* as a mandatory imperative rather than a permissible inference leads to silly results.

Congress often has reasons for using very specific language in statutes; this was certainly the case here. *See* 17267 *infra*. But not every time it uses precise language does Congress intend to preclude everything it fails to mention. It's hard to imagine any statute that doesn't contain multiple negative commands that we could infer from congressional failure to say everything. The panel's methodology constructs a trap that a court can spring whenever it can uncover a negative pregnant within otherwise clear statutory text. This will make legislative drafting significantly more difficult and give judges who are none too keen on *Chevron* deference a bonanza for digging up clear congressional intent when Congress has said nothing at all.

## II

In distilling congressional intent from statutory silence, the panel fails to acknowledge *why* Congress included language about corroboration of credible testimony in the first place. An IJ is assumed to have all the inherent powers of an adjudicator, including the authority to request corroboration of evidence. But a misguided line of cases took away an IJ's authority to request corroboration of credible testimony. *See, e.g.*, *Kataria* v. *INS*, 232 F.3d 1107, 1113 (9th Cir. 2000) ("It is well established in this circuit that the BIA may not require independent corroborative evidence from an asylum applicant

who testifies credibly in support of his application."). Congress tried to patch up the hole we had carved into the statute by overruling this ridiculous prohibition and reinstating the IJ's full adjudicatory powers. *See* H.R. Rep. No. 109-72 (2005). Congress wanted to make sure we got the message, so it spoke precisely. Because there was no case law prohibiting an IJ from asking for documentary evidence, Congress had no reason to say anything about it. Congress surely didn't think that by reinstating the IJ's power as to credible testimony it was actually cutting back the IJ's power as to documents. Congress would reasonably have assumed that if it said nothing, it was preserving the status quo.

The panel seems to believe that by enhancing the IJ's authority in one respect, Congress diminished the IJ's authority in all other respects, even though there is no committee report, floor statement, witness testimony or any other indication that Congress meant to say anything at all on the subject. It's quite a stretch to infer that Congress expressly gave the IJ the power of asking for corroboration of credible testimony with one hand and silently took away the power to ask for corroboration of other kinds of evidence with the other. Far more likely is that Congress used very specific language to surgically remove the statutory tumor our misguided case law had metastasized. The panel's interpretation is a drastic impairment of the IJ's authority and one we should not adopt without an explicit congressional command.

### III

We can see a small sample of the evil perpetuated by the panel's rule in this very case. As it happens, the agency here interpreted the statutory provision at issue and came out precisely the other way. Mesmerized by the white space on the statutory page, the panel doesn't even acknowledge the BIA's published opinion interpreting the statute, which held: "[W]e do not believe that a respondent, bound by the requirements of the REAL ID Act, can satisfy his burden of proof by pro-

ducing the inconclusive portions of a record of conviction, and by *failing to comply* with an appropriate request from the Immigration Judge to produce the more conclusive portions of that record." *Matter of Almanza-Arenas*, 24 I. & N. Dec. 771, 776 (BIA 2009) (emphasis added).

The BIA here is speaking on a matter that is of vital significance to the administration of the immigration system, as it deals with the authority of Immigration Judges. It is also a subject as to which the BIA, which closely supervises the IJs, has considerable expertise: *Chevron* aside, one would want to know what the BIA has to say on the subject and defer to its interpretation as much as possible. But having discovered the holy grail of plain meaning in the words Congress did not write, the panel pays no attention to what the BIA has to say. The panel's side-stepping maneuver opens up a gold mine for parties challenging agency action, especially those governed by highly complex statutes, such as the EPA, FEC, SEC or FDA. I doubt there are many statutes or rule books that can't be found to have a clear meaning using the panel's method of construction, and it will be pretty much up to each panel to decide when to overrule (or ignore) an agency's reasonable interpretation of the statute it is administering. It opens the gates for challenges of an agency's construction based not only on what a statute says, but also on everything it might exclude through negative implications.

## IV

The potential difficulties created by the panel's ruling may not seem terribly important because the document requested here is a domestic criminal record, which the government may be able to obtain as readily as the petitioner. But the rule that the panel adopts applies to all immigration proceedings, and not just to conviction records, but to all documents, foreign as well as domestic. While criminal records can be obtained by ICE with minor difficulties, the same is not true with respect to foreign birth, marriage and death certificates; union mem-

bership and political party cards; and records of medical treatment and hospital stays that are located abroad.

If an applicant for asylum presents a foreign doctor's certificate that he was hospitalized following what he claims was a police beating, but the IJ is unconvinced and asks for actual hospital records, the alien can refuse (as Rosas-Castaneda did) without any explanation, and the IJ may not hold it against him in ruling on the asylum petition. As a practical matter, ICE cannot obtain all such documents. Thus, the asylum applicant can force the IJ to adjudicate his case based on the evidence he presented without drawing an adverse inference from the unexplained failure to provide available evidence the trier of fact believes to be necessary to a fair and accurate decision. This is very bad law but no surprise: Bad legal rules lead to bad results. This is precisely the kind of problem we should solve ourselves rather than counting on the Supreme Court to solve it for us. I must dissent.

---

**OPINION**

SILVERMAN, Circuit Judge:

Luis Javier Rosas-Castaneda, a native and citizen of Mexico and a lawful permanent resident of the United States, was convicted of attempted transportation for sale of an amount of marijuana weighing more than two pounds in violation of Arizona law. An Immigration Judge found Rosas-Castaneda removable based on his conviction for a controlled substance violation, but found the record of conviction unclear as to whether his offense constituted an aggravated felony. The IJ requested that Rosas-Castaneda submit the criminal transcript to corroborate the inconclusive record; however, Rosas-Castaneda declined to provide any further evidence of his conviction. Instead, Rosas-Castaneda argued, citing *Sandoval-Lua v. Gonzales*, 499 F.3d 1121 (9th Cir. 2007), that he met

his burden for relief from removal because the record of conviction did not conclusively prove that his offense constituted an aggravated felony. The IJ denied his application for cancellation of removal. On appeal, the BIA affirmed, ruling that the REAL ID Act changes the result of *Sandoval-Lua*. We hold today that it does not. Both before and after the REAL ID Act, including at the time *Sandoval-Lua* was decided, the burden of proof was, is, and remains on the alien. In this particular respect, the REAL ID Act merely codified existing law. Therefore, the REAL ID Act did not affect the holding in *Sandoval-Lua*.

## FACTUAL AND PROCEDURAL BACKGROUND

Rosas-Castaneda entered the United States as a lawful permanent resident on August 13, 1993. On December 15, 2006, Rosas-Castaneda was charged with one count of attempted transportation for sale of an amount of marijuana weighing more than two pounds and one count of knowingly possessing for sale an amount of marijuana weighing more than four pounds. On March 22, 2007, he signed an agreement to plead guilty to one count: "attempted transportation of marijuana for sale, involving more than two pounds, a class three felony, in violation of A.R.S. §§ 13-1001, 13-3405, 13-3401, 13-601, 13-702, and 13-801." On April 23, 2007, he was convicted in Maricopa County Superior Court on that count and sentenced to 30 months' incarceration.

Rosas-Castaneda was served with a notice to appear on April 25, 2007, alleging that he was removable because his conviction constituted (1) an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in a controlled substance) and (U) (attempt to commit an aggravated felony), and (2) a violation of a law relating to a controlled substance, as defined in 8 U.S.C. § 1227(a)(2)(B)(i). Rosas-Castaneda denied removability.

On June 12, 2009, the IJ admitted Rosas-Castaneda's conviction documents into evidence — the criminal complaint

against him and his plea agreement. Based on these documents, the IJ found Rosas-Castaneda removable on account of his conviction for a controlled substance offense, but not on the basis of a conviction for an aggravated felony. The IJ found that the statute under which Rosas-Castaneda had been convicted was divisible, and that the government had failed to prove by clear and convincing evidence that Rosas-Castaneda's offense constituted an aggravated felony for purposes of removal.

After the IJ found him removable based on the conviction for a controlled substance offense, Rosas-Castaneda stated his intention to apply for cancellation of removal. Aggravated felons are not eligible for cancellation of removal. 8 U.S.C. § 1229b(a). Having found the statute of conviction divisible, the IJ reviewed the record of conviction. These documents reveal only that Rosas-Castaneda was convicted of one count of "[a]ttempted transportation of marijuana for sale, involving more than two pounds, a class 3 felony in violation of A.R.S. §§ 13-1001, 13-3405, 13-3401, 13-610, 13-701, 13-702, and 13-801." The IJ found the record of conviction inconclusive and ordered Rosas-Castaneda to produce a transcript of his Arizona criminal court plea hearing.

Rosas-Castaneda argued that under *Sandoval-Lua*, 499 F.3d 1121, to meet his burden of proof to establish eligibility for cancellation of removal, he needed only to prove that the record of conviction is inconclusive as to whether he was convicted of an aggravated felony. The IJ rejected that argument, distinguishing *Sandoval-Lua* as inapplicable to applications for relief submitted under the subsequently enacted REAL ID Act, and held that the REAL ID Act placed the burden on Rosas-Castaneda to comply with a request to corroborate inconclusive conviction documents. Rosas-Castaneda represented that he would request the transcript, and the IJ continued the proceedings — first until July 28, 2009, then again until September 3, 2009.

In a hearing on September 3, 2009, Rosas-Castaneda argued that (1) the rule stated in *Sandoval-Lua* applied to post-REAL ID Act cases, (2) he was not required to present any further conviction documents to meet his burden of proof for eligibility for cancellation of removal, and (3) he had met his burden by showing that the judicially noticeable conviction documents in the record were inconclusive as to whether his offense constituted an aggravated felony. The IJ asked Rosas-Castaneda if he had requested and received the transcript of his plea hearing. Rosas-Castaneda responded that he had attempted to get the transcript, but had not yet received it. Rosas-Castanda then declined the IJ's offer of a continuance until the transcript arrived. The IJ proceeded to receive evidence in support of Rosas-Castaneda's application for cancellation of removal "in the interest of judicial economy." The IJ issued an oral decision and order at the close of the hearing.

The IJ found Rosas-Castaneda removable based on his conviction of an offense relating to a controlled substance, and denied his application for cancellation of removal based on his failure to prove conclusively that he had not been convicted of an aggravated felony. The IJ held that under the REAL ID Act, Rosas-Castaneda could be required to produce transcripts from the state criminal proceedings as "corroborating evidence." The IJ distinguished *Sandoval-Lua* on the grounds that *Sandoval-Lua* did not apply post-REAL ID Act. The IJ also found that if Rosas-Castaneda were eligible for cancellation of removal, then his application for relief would have "merit[ed] a favorable exercise of discretion."

On appeal, the BIA did not review whether Rosas-Castaneda's conviction documents were, in fact, inconclusive; nonetheless, the Board affirmed the IJ's decision that the production of an inconclusive record of conviction did not carry Rosas-Castaneda's burden to prove eligibility for cancellation of removal. The BIA also distinguished our decision in *Sandoval-Lua* as not applicable to applications for relief filed after the effective date of the REAL ID Act. Furthermore, the

BIA, having found him ineligible for cancellation of removal, mooted the IJ's finding that, if eligible, Rosas-Castaneda's application would merit a favorable exercise of discretion in granting cancellation of removal. Rosas-Castaneda's appeal was dismissed, and he has been removed from the United States.[1]

## JURISDICTION

On January 11, 2010, Rosas-Castaneda filed a timely petition for review of the BIA's December 18, 2009, final order of removal. This Court has jurisdiction to review the petition's constitutional and legal claims pursuant to 8 U.S.C. § 1252(a)(2)(D). Jurisdiction in the immigration proceedings was proper under 8 U.S.C. § 1229a.

## STANDARD OF REVIEW

We review the unpublished decision of the BIA under the deference scheme set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L.Ed. 124 (1944), "entitling the interpretation to a respect proportional to its power to persuade." *Vasquez v. Holder*, 602 F.3d 1003, 1012 n.8 (9th Cir. 2010) (internal citations and quotations omitted).

"Legal determinations regarding an alien's eligibility for cancellation of removal are reviewed de novo." *Sandoval-Lua*, 499 F.3d at 1126 (quoting *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1194 (9th Cir. 2006)).

---

[1]We retain jurisdiction notwithstanding Rosas-Castaneda's having been removed. *See* 8 U.S.C. § 1252(d); *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001) (en banc).

*Discussion*

## I. *Sandoval-Lua* Applies in the Post-REAL ID Act Context.

Prior to the enactment of the REAL ID Act in 2005, a removable alien applying for discretionary relief from removal had the burden of proving by a preponderance of the evidence (1) that she was eligible for relief, and (2) that her application merited a favorable exercise of discretion. 8 C.F.R. § 1240.8(d). For a lawful permanent resident to prove eligibility for cancellation of removal, she must show that she has (1) been a lawful permanent resident for at least five years; (2) resided in the United States continuously for seven years, regardless of immigration status; and (3) not been convicted of any aggravated felony. *Toro-Romero v. Ashcroft*, 382 F.3d 930, 937 (9th Cir. 2004) (citing 8 U.S.C. § 1229b(a)). Conviction of an aggravated felony constitutes a mandatory ground for denial of relief. *Sandoval-Lua*, 499 F.3d at 1127. Where an alien's conviction "indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." *Id.* at 1129 (citing 8 C.F.R. § 1240.8(d)).

**[1]** In 2007, we decided *Sandoval-Lua*, the facts of which are similar to those in this case. In *Sandoval-Lua*, we upheld an IJ's decision finding a removable alien eligible for cancellation of removal because the statute under which the alien was convicted was divisible and the record of conviction was inconclusive as to whether the offense constituted an aggravated felony. *Id.* at 1124. Relying on the Supreme Court's decisions in *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), and *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990), *Sandoval-Lua* held that under the modified categorical approach, the relevant inquiry was "whether the judicially noticeable documents establish that [the alien's] conviction

*necessarily* was for all of the elements constituting an aggravated felony . . . . If the record of conviction does not so establish, [then the conviction] cannot amount to the generic offense, and [the alien] has carried his burden." 499 F.3d at 1131. We therefore held that "[b]y submitting an inconclusive record of conviction, Lua has affirmatively proven under the modified categorical analysis that he was not necessarily 'convicted of any aggravated felony.' " *Id.* at 1130 (quoting 8 U.S.C. § 1229b(a)(3)).

We now consider whether the REAL ID Act has changed the law regarding an alien's burden of proof in cancellation of removal actions in such a way that *Sandoval-Lua* has been statutorily overruled.

### A. The Statutory Language of 8 U.S.C. § 1229a(c)(4)(A) Confirms That the REAL ID Act Codified the Existing Regulatory Scheme.

**[2]** The REAL ID Act amended the Immigration and Nationality Act in 2005, inserting paragraph (4), titled "Applications for Relief from Removal," into 8 U.S.C. § 1229a(c). Pub. L. No. 109-13, § 101(d)(2), 119 Stat. 231 (2005). The statute reads:

> An alien applying for relief or protection from removal has the burden of proof to establish that the alien (i) satisfies the applicable eligibility requirements; and (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

8 U.S.C. § 1229a(c)(4)(A). This provision appears no different in substance than the requirement stated in the regulation at issue in *Sandoval-Lua*. That regulation, 8 C.F.R. § 1240.8(d), reads:

> The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or

privilege and that it should be granted in the exercise of discretion.

Under both the recently enacted Act and the pre-existing regulation, aliens applying for cancellation of removal have the burden of establishing (1) their eligibility for relief, and (2) that their applications merit a favorable exercise of discretion. There is no evidence to suggest that the burden of proof in 8 C.F.R. § 1240.8(d) was adopted with any extraordinary meaning, or that Congress intended the REAL ID Act to distinguish or supersede the regulation's meaning in any way. Indeed, 8 C.F.R. § 1240.8(d) is still a valid regulation, in force with no apparent change to its terms or their meaning since the enactment of the REAL ID Act. Because the enactment of 8 U.S.C. § 1229a(c)(4)(A) merely codifies the regulation at 8 C.F.R. § 1240.8(d), the REAL ID Act did not work any change in that law that affects *Sandoval-Lua*'s logic, holding, or applicability.

### B. The Statutory Language of 8 U.S.C. § 1229a(c)(4)(B) Does Not Grant an IJ Authority to Require an Alien to Supplement the Record of Conviction.

**[3]** The text of 8 U.S.C. § 1229a(c)(4)(B) reads:

The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden,

the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible *testimony*, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

(emphasis added).

**[4]** The plain language of 8 U.S.C. § 1229a(c)(4)(B) unambiguously authorizes IJs to request corroboration of only *testimonial* evidence, and conspicuously excludes the authority to require an alien to corroborate "other evidence in the record." "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *See Kucana v. Holder*, ___ U.S. ___, 130 S. Ct. 827, 838 (2010) (quoting *Nken v. Holder*, 556 U.S. ___, 129 S. Ct. 1749, 1759, 173 L. Ed. 2d 550 (2009)). The third sentence of 8 U.S.C. § 1229a(c)(4)(B), describing the universe of evidence available to support an IJ's decision, clearly distinguishes "testimony" from "other evidence in the record." In light of this distinction, the charge to the IJ in the second sentence to "determine whether or not *testimony* is credible" and the grant of the authority to the IJ in the fourth sentence to request that "the applicant . . . provide evidence which corroborates otherwise credible *testimony*" should naturally be circumscribed to refer only to *testimony*, and not to "other evidence in the record," such as conviction documents. *Id.* (emphases added).

Furthermore, the authority to require corroborating evidence focuses on the issue of "*credible* testimony" and an applicant's credibility generally, 8 U.S.C. § 1229a(c)(4)(B) (emphasis added); however, there are no issues of credibility raised by the narrow set of judicially noticeable documents

available under *Shepard*, 544 U.S. at 16, to determine if an alien's conviction renders him ineligible for relief. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute . . . .").

The plain language of the statute therefore demonstrates that Congress was unambiguous in its intent to grant an IJ authority to request corroboration of only testimonial evidence under 8 U.S.C. § 1229a(c)(4)(B). Moreover, the BIA could not have reasonably concluded that 8 U.S.C. § 1229a(c)(4)(B) extended the scope of the IJ's authority to request evidence corroborating "otherwise credible testimony" to include judicially noticeable conviction documents. Having determined that there is no statutory ambiguity in 8 U.S.C. § 1229a(c)(4)(A) or (B), we find the BIA's position incorrect, and accord it no deference. *See Choin v. Mukasey*, 537 F.3d 1116, 1120-21 (9th Cir. 2008).

**[5]** "We are bound by circuit precedent unless there has been a substantial change in relevant circumstances . . . or a subsequent en banc or Supreme Court decision that is clearly irreconcilable with our prior holding." *United States v. Vasquez-Ramos*, 531 F.3d 987, 991 (9th Cir. 2008) (internal citations omitted). Because the REAL ID Act has made no change in the law that would make our precedent in *Sandoval-Lua* inapplicable to applications for relief submitted under the REAL ID Act, we hold that the BIA erred in failing to apply *Sandoval-Lua* to Rosas-Castaneda's application for cancellation of removal.

## II. The Record of Conviction Is Inconclusive as to Whether Rosas-Castaneda's Offense Qualifies as an Aggravated Felony.

**[6]** To determine whether Rosas-Castaneda's conviction for "attempted transportation for sale of more than two pounds" under Ariz. Rev. Stat. § 13-3405 constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), the court

applies the two-step categorical approach articulated in *Taylor*.[2] *See Parrilla v. Gonzales*, 414 F.3d 1038, 1042-44 (9th Cir. 2005).

[7] Rosas-Castaneda's statute of conviction provides in relevant part: "A person shall not knowingly . . . transport for sale, import into this state or offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer marijuana." Ariz. Rev. Stat. § 13-3405(A)(4). A conviction under this statute does not qualify categorically as an aggravated felony because it contains solicitation offenses,[3] which we have held do not qualify as aggravated felonies within the meaning of 8 U.S.C. § 1101(a)(43)(B). *See Sandoval-Lua*, 499 F.3d at 1130 (citing *Leyva-Licea v. INS*, 187 F.3d 1147, 1150 (9th Cir. 1999)). Because Ariz. Rev. Stat. § 13-3405 "punishes solicitation, the full range of conduct encompassed by the statute does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(B)." *Sandoval-Lua*, 499 F.3d at 1128

---

[2]The government argues that the Supreme Court's decision in *Nijhawan v. Holder*, ___ U.S. ___, 129 S. Ct. 2294, 174 L. Ed. 2d 22 (2009), has undermined *Sandoval-Lua*; however, *Nijhawan* is inapposite. In *Nijhawan*, the Court "added a new step to the familiar categorical/modified-categorical approaches first announced in *Taylor* [ ]. Under this approach, we must first decide whether a requirement under a generic crime is an 'element' of the generic crime instead of simply a description of the 'particular circumstances' in which the offender committed the crime on a specific occasion." *Kawashima v. Holder*, 615 F.3d 1043, 1054 (9th Cir. 2010). As the Court has recently stated, *Nijhawan* affects those documents noticeable under *Shepard* only in cases where a circumstance-specific inquiry is required. *See Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 n.11 (2010).

Whether Rosas-Castaneda's offense qualifies as a aggravated felony turns on whether the elements, rather than the circumstances, of his conviction fall within the scope of the generic drug trafficking crime. *Sandoval-Lua* clearly applies. *Nijhawan* merely reaffirms that it does.

[3]The inclusion of the phrases "offer to transport for sale or import into this state," and "offer to sell or transfer marijuana" demonstrates that this statute includes solicitation offenses. *See Sandoval-Lua*, 499 F.3d at 1130.

(quoting *United States v. Rivera-Sanchez*, 247 F.3d 905, 909 (9th Cir. 2001)).

**[8]** Turning to the modified categorical approach, we consider "whether the record contains judicially noticeable documents which satisfy [Rosas-Castaneda's] burden of establishing by a preponderance of the evidence that his controlled substance conviction under [Ariz. Rev. Stat. § 13-3405] does not constitute a conviction of an aggravated felony." *Sandoval-Lua*, 499 F.3d at 1129. The list of judicially noticeable documents that this court may consider in applying the modified categorical approach is limited to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* (quoting *Shepard*, 544 U.S. at 16). Where a record of conviction proves inconclusive, an alien carries his burden of proving by a preponderance of the evidence that she has not been convicted of an aggravated felony. *Id.* at 1130. The record in this case includes the charging document and a copy of the plea agreement. Together these documents reveal only that Rosas-Castaneda was convicted of one count of "[a]ttempted transportation of marijuana for sale, involving more than two pounds, a class 3 felony in violation of Ariz. Rev. Stat. §§ 13-1001, 13-3405, 13-3401, 13-610, 13-701, 13-702, and 13-801."

**[9]** "If judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense," then those facts do not satisfy the modified categorical approach, which requires that a court "determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime." *United States v. Navidad-Marcos*, 367 F.3d 903, 909 (9th Cir. 2004) (quotation marks and internal citation omitted). Neither document in the record of conviction produces any specific information that definitively rules out the possibility that Rosas was convicted of a solicitation offense under Ariz. Rev. Stat. § 13-3405. We therefore hold the record of conviction

inconclusive, we grant Rosas-Castaneda's petition for review, vacate the BIA's order denying him cancellation of removal, and we remand to the BIA for further proceedings consistent with this opinion to permit the government to put forth reliable evidence to show that the petitioner was convicted of an aggravated felony.

PETITION GRANTED.